360 So.2d 285 (1978)
Pamella A. CUSTRED et al.
v.
JEFFERSON COUNTY, etc., et al.
S.C. 2677.
Supreme Court of Alabama.
June 16, 1978.
*286 William L. Irons, Birmingham, for appellants.
Edwin A. Strickland, Birmingham, for Jefferson County, appellee.
Douglas P. Corretti and David F. Ovson, Birmingham, for Cross Creek, Ltd., appellee.
William J. Baxley, Atty. Gen., and Henry H. Caddell, and Benjamin Cohen, Asst. Attys. Gen., amicus curiae for the citizens of Alabama.
BEATTY, Justice.
This is an appeal by plaintiffs, some seventy homeowners, from a judgment rendered in favor of Cross Creek, Ltd. (Cross Creek), a limited Alabama partnership.
The plaintiffs are homeowners (homeowners) living near the Patton Creek Wastewater Treatment Plant (Patton Plant) located in Hoover, Alabama. This sewage treatment plant was built in 1958 and is owned and operated by Jefferson County (County). In 1972 the County proposed a new sewage treatment plant for Patton Creek but the plans were never approved. Since 1972 homeowners from around the Patton Plant have registered many complaints about the increasing obnoxious odors emanating from the vicinity of Patton Creek, the fish kills and alleged health hazards caused by the treatment plant.
Patton Plant was designed to treat 3.0 million gallons per day (m. g. d.) of sewage but when the sewage flow exceeds 6.0 m. g. d. the excess bypasses the treatment facility and is dumped directly into Patton Creek. Patton Creek, which empties into Paradise Lake, thus receives raw untreated sewage when the sewage flow exceeds 6.0 m. g. d. And since 1975 the County has used a tanker truck to carry untreated sewage from the Patton Plant to another treatment plant.
*287 On February 17, 1976 the County enacted a resolution declaring a Sewer Moratorium for the Patton Plant. The pertinent provisions are:
WHEREAS, the Patton Creek Wastewater Treatment Plant has reached an overloaded condition, both hydraulically and organically, and effluent from this plant is not meeting requirements of the Environmental Protection Agency N.P.D. E.S. Interim Permit No. AL 0022942; and
WHEREAS, the County Commission has approved the construction of a temporary pumping station to pump approximately two million gallons of raw sewage from the Patton Creek collection system to the Cahaba River System in order to bring the Patton Creek Wastewater Treatment Plant back into its design parameters; and
WHEREAS, the Cahaba River Wastewater Treatment Plant will be near its design parameters when the additional two million gallons of sewage flow is pumped to it from the Patton Creek Basin; and
WHEREAS, any appreciable additional sewage flow beyond connections approved prior to 12:00 Noon on February 10, 1976, will place the Cahaba River Wastewater Treatment Plant in violation of its Interim Discharge Permit No. AL 0023027, as issued by the Environmental Protection Agency.
NOW, THEREFORE, BE IT RESOLVED BY THE JEFFERSON COUNTY COMMISSION as follows:
The following words and terms shall have the meanings hereby accorded them:
1. `Sewer connection moratorium' shall mean the moratorium on sewer connections in Jefferson County, Alabama, as set forth in this resolution.
2. `Approval' shall mean that approval of a subdivision plan by the appropriate department of Jefferson County, Alabama; the City of Hoover, Alabama; the City of Vestavia Hills, Alabama; the City of Mountain Brook, Alabama, and any other municipal corporation which issues such approval for subdivision approval.
3. `Preliminary subdivision plan' shall mean the initial required plan and drawing of a proposed subdivision submitted to the appropriate governmental authority for approval.
THERE IS HEREBY DECLARED, effective the 10th day of February, 1976, a sewer connection moratorium on the existing sewage system of the Patton Creek Wastewater Treatment Plant and the existing Cahaba River Wastewater Treatment Plant.
Provided, however, any sewer connections indicated on a preliminary subdivision plan which has received approval prior to February 10, 1976, shall be excluded from the sewer connection moratorium. Also excluded from the moratorium are sewer connections for unimproved lots within existing subdivisions which subdivisions have sewers installed to service the lots therein. Also excluded from the moratorium are sewer connections for improved lots which have installed approved alternate sewage disposal systems where said lot has sewer facilities adjacent thereto.
Provided, however, in the event that the average daily sewage flow to the Patton Creek Wastewater Treatment Plant reaches 3.3 million gallons per day (after completion of the Patton Creek Relief Pumping Station and proposed diversion of two (2) million gallons of sewage per day to the Cahaba River Wastewater Treatment Plant), no further connections will be permitted whether or not connection permits have been issued.
In about March, 1976 the Jefferson County Moratorium Committee was established, apparently by the Commissioner of Public Works, to review applications for sewer connection permits and to make recommendations to the Public Works Director-County Engineer on whether the applications were properly exceptions to the moratorium.
*288 Cross Creek, an alleged successor in interest to C.R.&S. Land Development Company (C.R.&S.), made a sewer permit request. Apparently C.R.& S., a dissolved corporation, and Cross Creek involved substantially the same investors. The Moratorium Committee granted it a sewer connection permit on January 12, 1977 for a proposed 133-unit apartment complex. Cross Creek also obtained a building permit from the City of Hoover on January 12, 1977. Although Cross Creek had not been formed until May 5, 1976 it claimed, through C.R.&S., to have received prior approval for a preliminary subdivision sewer plan. It has been estimated that when the proposed apartment complex is built it will add an additional 40,000 gallons of sewage daily to the Patton Plant.
After learning that Cross Creek had obtained both a sewer connection permit and a building permit, the plaintiff homeowners brought this action to enjoin construction of the apartment complex and to void Cross Creek's sewer permit. The trial court initially granted an ex parte temporary restraining order to plaintiffs. Later, the plaintiffs amended their complaint asking for injunctive relief against Cross Creek to remedy an alleged public nuisance caused by the Patton Plant.
The trial commenced on March 23, 1977 but the trial court interrupted the proceedings to appoint a special master, Southern Research Institute, to test the Patton Creek effluents and continued the trial until Southern Research Institute presented all of its findings. At several time intervals Southern Research Institute conducted tests at numerous test sites along Patton Creek and around Paradise Lake, analyzed the bacteriological samples and submitted reports to the trial court. After Southern Research Institute had finished its testing and submitted its reports, the trial concluded. The court entered an interim decree remanding all the evidence to the Moratorium Committee and the Commissioner of Public Works for the committee's reconsideration of its prior issuance of Cross Creek's sewer connection permit. The Moratorium Committee then filed its report approving Cross Creek's sewer permit as an exception to the moratorium. Thereafter, the trial court determined that the action by the Moratorium Committee granting Cross Creek's sewer connection permit was not arbitrary, capricious, fraudulent or the product of gross abuse; and accordingly it entered its final decree denying the plaintiff's requested relief.
Among the issues raised by appellants are these:
1. Whether the trial court erred when it determined that the Moratorium Committee did not act unreasonably, arbitrarily or capriciously in issuing the sewer permit.
2. Whether the trial court erred in denying plaintiffs' requested relief based upon the theory of nuisance.
The appellants argue that the trial court erred because (1) the Moratorium Committee acted arbitrarily and capriciously when it granted Cross Creek's sewer permit as an exception to the Moratorium Resolution because Cross Creek had no sewer plans prior to the enactment of the moratorium (and because Cross Creek cannot be a successor in interest to C.R.&S. since its plans were not only different from the present plans but were never signed); (2) the Moratorium Committee acted arbitrarily in granting the sewer permit since the Moratorium Resolution was violated when the "appropriate governmental authority" did not approve Cross Creek's building plans prior to the moratorium; (3) the Moratorium Committee acted arbitrarily in granting Cross Creek's sewer permit because an express provision of the Moratorium Resolution was violated, which prohibits further sewer connections when the average daily flow reaches 3.3 m. g. d.; (4) the trial court excluded from evidence page fifteen of Southern Research Institute's report and it was therefore not submitted to the Moratorium Committee for their consideration, and (5) administrative due process was violated when the Moratorium Committee did not hear the testimony presented at trial. However, all *289 of these focus upon the trial court's scope of review when it reviews the order of an administrative body.
A fundamental concept of judicial review of administrative action is that it is a limited review, delineated by statute and court-established standards which relate to the nature of the issues or questions open to judicial review. Alabama State Tenure Commission v. Mountain Brook Board of Education, 343 So.2d 522 (Ala.1976); 2 Am. Jur.2d §§ 612, 678. Cf. Alabama, Tennessee and Northern Railroad Co. v. U. S., 207 F.Supp. 638 (D.C.Ala. 1962). In Nelson v. Mobile Bay Seafood Union, 263 Ala. 195, 82 So.2d 181 (1955), a case similar to the present controversy, the question was whether the trial court properly granted an injunction against the respondents who were dredging for seed oysters under a license granted by the Alabama Department of Conservation. In Nelson this Court cited with approval language contained in Carson Cadillac Corp. v. City of Birmingham, 232 Ala. 312, 167 So. 794 (1936):
`It is well-settled that courts of equity, in the absence of fraud or gross abuse, will not interfere with the exercise of discretion by administrative boards in the determination of the necessity and requirements of public accomplishment, much less control the judgment of such boards in respect to matters within the technical field of their duties and powers.'
Here no question was raised that the Moratorium Committee's determination to grant Cross Creek a sewer permit was the result of fraud. However, assuming that arbitrariness or capriciousness is equivalent to gross abuse, then the question is whether the committee's action is supported by a scintilla of evidence which will furnish an inference that Cross Creek was properly granted a sewer connection permit. The record discloses evidence that Cross Creek did have sewer plans, through C.R.&S., prior to the enactment of the moratorium and they were not only substantially the same as the present plans but were approved in 1969. It also discloses that the proper governmental authority, Jefferson County, approved Cross Creek's building plans prior to the enactment of the sewer moratorium and prior to the annexation of the property by the City of Hoover.
Although there is evidence in the record that the average daily sewage flow on many occasions has exceeded the 3.3 m. g. d. limit established by the proviso in the Moratorium Resolution, the report of the Moratorium Committee states in substance that this provision is without effect because a condition precedent never occurred. That alleged condition precedent was that the Patton Creek Relief Pumping Station be built to transport sewage to another treatment plant and that two million gallons of sewage per day be diverted to the Cahaba River Wastewater Treatment Plant. Because the Moratorium Committee's interpretation of the proviso is not a question of disputed fact, but rather a question of statutory construction, we must consider whether that interpretation was legally justifiable.
For purposes of construction the Moratorium Resolution is similar to an ordinance, and the interpretation of an ordinance is governed by the same rules of construction as a state statute. American Bakeries Co. v. City of Opelika, 229 Ala. 388, 157 So. 206 (1934); S. & S. Distributing Co. v. Town of New Hope, 334 So.2d 905 (Ala.1976). The general rule of construction is that where the language of a statute is unambiguous, the clearly expressed intent must be given effect, and there is no room for construction. Alabama Industrial Bank v. State ex rel. Avinger, 286 Ala. 59, 237 So.2d 108 (1970). Also, when the language is plain, it should be considered to mean exactly what it says. Alabama Industrial Bank v. State, supra.
The clearly expressed intent of the Jefferson County Commission is to invoke the moratorium against grantees of sewer connections permits only after the approved *290 pumping relief station has been built and the total sewage inflow to Patton Plant reaches 5.3 million gallons per day. The intent of the Moratorium Committee to limit total sewage flow to 5.3 m. g. d. can be seen by the 3.3 m. g. d. limitation coupled with the 2.0 m. g. d. proposed diversion from Patton Plant. In the light of these rules and after considering the provision in question which unequivocally and plainly states that when "the average daily sewage flow . . . reaches 3.3 million gallons per day (after completion of the Patton Creek Relief Pumping Station and proposed diversion of two (2) million gallons of sewage per day . . .), no further connections will be permitted . . .," we believe that the provision springs into effect only after the pumping relief station is built and two million gallons of sewage per day is diverted from the Patton Plant. Stated in another way, the language in the provision limiting sewer connections if the sewage flow reaches 3.3 m. g. d. does not become effective until the occurrence of the condition precedent. That condition precedent is that the Patton Creek Relief Pumping Station be built and two million gallons of sewage per day be diverted from the Patton Plant.
Therefore, the Moratorium Committee's interpretation that the proviso is without effect due to the non-occurrence of the condition precedent is legally justifiable. And because the provision in the Moratorium Resolution was not violated, the Moratorium Committee did not act arbitrarily in granting Cross Creek's sewer permit.
The appellants also contend that the trial court erred by excluding from evidence page fifteen of Southern Research Institute's report. However, the trial court did not err in excluding page fifteen of the report from evidence because determinations of relevancy rest within the sound discretion of the trial court. McCurdy Concrete, Inc. v. L. Miller & Son, Inc., 57 Ala. App. 340, 328 So.2d 594 (1976). We have examined the excised page and find that it did not conform to the trial court's request but contained conclusions. The trial court requested Southern Research Institute to furnish findings of fact, not conclusions. Apparently the trial court felt there was a risk that if the excluded page were admitted into evidence and subsequently presented to the Moratorium Committee, the committee might have substituted the judgment of Southern Research Institute rather than making independently arrived at conclusions of their own. Therefore, we find that the trial court's excluding page fifteen from evidence was not an abuse of discretion.
Appellants argue further that administrative due process was violated when the Moratorium Committee did not hear the testimony at trial. However, appellants have not cited us to any reference in the record nor have we found any evidence in the record tending to show that the Moratorium Committee did not consider the evidence on remand. Indeed, the report of the Moratorium Committee in response to the interim decree of the trial court shows that the committee met to reconsider Cross Creek's sewer permit status in light of all the evidence. Contrary to the appellants' position this raises a reasonable inference that the Moratorium Committee did consider the evidence adduced. And neither the record nor appellants' brief contain any fact which impeaches this inference. Thus, we perceive no violation of administrative due process by the Moratorium Committee.
Finally, the appellants argue that the trial court erred because it did not adjudicate the question of nuisance. This position, however, overlooks the final decree of the trial court which denies plaintiffs' requested relief as contained in their amended complaint and in their original complaint. Plaintiffs' amended complaint sought injunctive relief for a public nuisance created by the Patton Plant and plaintiffs' original complaint apparently sought injunctive relief for a private nuisance. Thus, the trial court did adjudicate *291 the issues of public and private nuisance raised by the pleadings.
Furthermore, when the trial court hears evidence ore tenus its conclusions will not be disturbed on appeal unless palpably erroneous. Rice v. Hill, 278 Ala. 342, 178 So.2d 168 (1965). We have carefully reviewed the record and do not find that the trial court's findings are palpably erroneous.
Although on this appeal none of the parties challenged Jefferson County's authority to adopt the Moratorium Resolution, nevertheless it is apparent that this contest is one which deals, in part at least, with the governing authority of Jefferson County to make decisions which bind its constituency. At bottom the issue is more political than legal. Therefore, the question of whether or not the decisions made were appropriate more properly ought to be resolved in another arena.
Because there is no reversible error the cause is due to be, and is, affirmed.
AFFIRMED.
MADDOX, FAULKNER and EMBRY, JJ., concur.
TORBERT, C. J., and BLOODWORTH, J., concur in the result.
JONES, ALMON and SHORES, JJ., dissent.
JONES, Justice (dissenting):
The general purpose of the Moratorium Resolution was to prevent further overburdening of the Patton Plant facility. Therefore, I believe that a reasonable construction of the provision in question is that it does not contain a condition precedent that a pumping relief station be built before the 3.3 m. g. d. flow limitation became effective. The interpretation, then, by the majority that the provision was void due to a failure of a condition precedent is erroneous. I cannot agree with the majority's interpretation that the provision is void, and I would hold that it prohibits sewer connections even if permits have been issued when the average daily flow of sewage reaches 3.3 m. g. d.
I interpret the language in the second "Provided, however" paragraph as a limitation on the exception expressed in the foregoing paragraph of the Moratorium Resolution and not as a condition precedent to the operative effect of the moratorium. This interpretation is consistent with the general purpose of the Moratorium Resolution. In essence, the majority's interpretation means that the county decreed that, should it build more treatment plants, it would limit the amount of sewage flow; but, until then, it would not place any limitations on the input in the system. I am unwilling to accord to the governing body of Jefferson County such frivolity of reasoning.
Counsel for Appellees argue, and I accept as accurate, the proposition that Jefferson County is vested with the sole and exclusive control of the Jefferson County sewage system, including the Patton Creek Wastewater Treatment Plant. Amendment 73 to the 1901 Constitution of Alabama (1948).
I further agree with the majority that the Moratorium Resolution is a "reasonable and nondiscriminatory" exercise of the County's authority as constitutionally prescribed. But minimum due process requirements mandate adherence to its own rules and regulations. See, generally, Lynn wood Property Owners Association v. Lands Described in Complaint, etc., et al [Ms.S.C. 2502, May 26, 1978], 359 So.2d 357 (Ala. 1978).
Because there is undisputed evidence in the record that the average daily flow has exceeded the 3.3 m. g. d. limit, the Moratorium Committee erred in granting a sewage connection permit to Cross Creek that would allow sewage connections to Patton Plant. Therefore, I would reverse the trial *292 Court's order affirming the action of the Moratorium Committee.
ALMON and SHORES, JJ., concur.