B.D. Peterson and American Fitness Center of Alabama, Inc., appeal from a judgment of the Jefferson County Circuit Court denying injunctive relief and rejecting a claim for damages. We affirm.
The pertinent facts out of which this controversy arises are, in large part, set out in the final decree (as amended) of the Circuit Court:
"This cause presents a justiciable controversy which is properly brought in a Court of Equity. The action is brought by two Plaintiffs. Plaintiff, Peterson, is an individual who is the owner of improved real property situated in Jefferson County, Alabama and the corporate Plaintiff, American Fitness Center of Alabama, Inc., is an Alabama *Page 840 
corporation. Plaintiff, Peterson, has leased to Plaintiff, American Fitness Center, the said real property with improvements. The intended use of the subject property is for a `fitness center', the operation of which will entail the utilization of a considerable amount of water. The Jefferson County Commission, in the exercise of its powers, has built and does maintain the Patton Creek Waste Water Treatment Plant which is a sewage disposal facility and which serves residents and commercial establishments in the county. Because of the increase in demands for sewage treatment beyond the design capacity of the plant and its EPA permit in the area of Jefferson County which is served by the said plant, the county did, in the exercise of its administrative powers and under supervision of the Alabama Water Improvement Commission and the Environmental Protection Agency of the Federal Government, declare a moratorium upon the further burdening of the plant and its facilities by new installations, except for already approved new installations. This action was taken by the Commission on February 10, 1976. Later, on December 23, 1976, September 27, 1977, June 20, 1978, and on July 5, 1978, amendments were made to the moratorium resolution. Although it is in no way controlling on this decision, it is noted that the latter amendment included, specifically, connections, re-connections, expansions and changed uses of property and amounted to a confirmation of the general statements made in the original moratorium resolution. The intended use of the subject property as a `fitness center' is a changed use. The Moratorium Committee which was established by the Jefferson County Commission allotted to the prospective user of the subject property a daily sewer allocation of 471 gallons, which was the average daily sewer use of the property for the past five years. According to the evidence, the operation of the `fitness center' would require in excess of 3,000 gallons daily.
In the Bill of Complaint, as amended, the following basic legal principles are set forth as grounds for the granting by the Court of the prayers contained in the Bill of Complaint:
1. That the Jefferson County Commission was without authority to adopt the moratorium resolutions and
2. That the action of the Jefferson County Commission, through the Moratorium Committee, in the allotment of the stated gallonage to Plaintiffs for the operation of the `fitness center' was arbitrary and capricious and was not based upon any lawful authority and was not governed by any resolution of the Defendants or any enabling act enacted by the Legislature of the State of Alabama, and
3. The violation by Jefferson County of sections of the United States Constitution and the Constitution of the State of Alabama and specifically that Defendants are depriving Plaintiffs of their right to equal protection under the law by not allowing Plaintiffs a sufficiency of water gallonage to enable Plaintiffs to use their said property for a `fitness center' even though said real property is properly zoned for commercial use.
At the conclusion of the testimony of Plaintiffs and after each Plaintiff had rested its case, the Defendants moved the Court, orally, for a directed verdict and judgment. Since it was near the close of the day, and because the Court desired to conduct a further study of the legal issues involved, the Court delayed its ruling upon the motion until this instant date at which time the Court has announced, from the bench, its ruling upon the motion of Defendants.
Some of the questions raised by the pleadings and proof in this instant case have been treated and decided in the case ofCustred, et al vs. Jefferson County, et al on June 16, 1978, 12ABR 1554 — S.C. 2677.[1] With regard to the question of arbitrariness and capriciousness as raised by the pleadings in this instant case, in Custred the Supreme Court quoted fromCarson Cadillac Corp. vs. City of Birmingham, 232 Ala. 312,167 So. 794 (1936):
 `It is well-settled that courts of equity, in the absence of fraud or gross abuse, *Page 841 
will not interfere with the exercise of discretion by administrative boards in the determination of the necessity and requirements of public accomplishment, much less control the judgment of such boards in respect to matters within the technical field of their duties and powers.'
and then stated as follows: `However, assuming that arbitrariness or capriciousness is equivalent to gross abuse, then the question is whether the committee's action is supported by a scintilla of evidence which will furnish an inference that Cross Creek was properly granted a sewer connection permit.' Under this `scintilla rule', this instant Court finds much more of a scintilla of evidence upon which to base an inference that the stated actions of the Committee and Commission were legally proper.
The Court finds that the Jefferson County Commission had full legal authority to adopt the subject moratorium resolutions. The Court further finds that the activities of Defendants in the allotment of the stated water gallonage to Plaintiffs was [sic] not arbitrary, capricious or without lawful authority therefor and further that there has been no violation on the part of the Defendants on any of the constitutional rights of the Plaintiffs.
As stated by the Court from the bench, the motion of Defendants for a directed verdict and judgment is granted.
Accordingly, it is CONSIDERED, ORDERED, ADJUDGED and DECREED by the Court as follows:
ONE: A judgment is hereby rendered in favor of Defendants and against Plaintiffs and the cause is dismissed, with prejudice.
TWO: The costs of this action are taxed to Plaintiffs, for which let execution issue."
The appellees have conceded that their motion at the close of the plaintiffs' case was incorrectly denominated a motion for a directed verdict, but it appears that both the trial court and the parties have treated this motion as a Rule 41 (b) ARCP motion, and thus, we shall consider it accordingly. See Chaneyv. General Motors Corp., 348 So.2d 799 (Ala.Civ.App. 1977).
The appellants contend that the trial court erred in the following respects:
 1. in ruling that as a matter of law, the subject property did not fall within an enumerated exception to the moratorium resolution;
 2. in considering the operative effect of a resolution of the Jefferson County Commission on July 5, 1978;
 3. in failing to rule that the July 5th resolution impaired the appellants' contractual obligations;
 4. in ruling that the enforcement of the resolution was not arbitrary, capricious and violative of due process and equal protection;
 5. in ruling that the allocation of 471 gallons per day was not arbitrary, capricious and violative of due process and equal protection and
6. granting the motion for directed verdict.
We have considered this sewer moratorium and the actions of the administrative body charged with its enforcement very recently, Custred v. Jefferson Cty., 360 So.2d 285 (Ala. 1978) and in that case, we noted that "judicial review of administrative action is . . . limited." Additionally, this case was heard by the trial court sitting without a jury. Theore tenus rule applies and the trial court's conclusions will not be disturbed on appeal unless palpably erroneous. Custred,supra.
 I
The appellants urge this court to recognize that since a valid building permit was issued for the original construction of the building in question in 1963, the property is specifically excluded from the operation of the moratorium resolution by the resolution's terms.
 "Provided, however, there shall be excluded from this moratorium any sewer connection authorized by valid building permits issued prior to the date hereof by Jefferson County . . ."
The exception noted above does include the sewer connections installed in the original construction of this building and the sewer connections which were installed in a *Page 842 
1966 renovation. The appellants however, are seeking an increased sewer allocation to service installations which have not been authorized by a valid building permit. The lack of a valid building permit is the very reason that this litigation was instigated. The appellants allege that when they submitted the plans and specifications for their proposed renovation to the Building Department of Jefferson County, they were informed of the necessity of applying for an exception to the moratorium. The unfavorable sewer allocation is the precipitating factor that caused this action to be filed. The trial court did not err in refusing to find that this property was not within the exclusions provided in the original moratorium resolution.
 II
The appellants have raised two issues relating to the trial court's consideration of a resolution of the Jefferson County Commission passed on July 5, 1978. In the amended final decree, the trial court noted that its consideration of this resolution was not controlling in the decision rendered, but we do not consider it necessary to decide the propriety vel non of the trial court's treatment regarding the resolution. The trial court rendered its decision after the appellants presented their evidence and the record indicates that the appellants introduced this resolution in evidence. (Plf. Peterson's Exhibit # 6.) It does not seem consonant with sound principles of judicial administration to allow a party to introduce evidence and assert on appeal that the trial court erred to reversal by admitting that evidence. In 32A C.J.S. Evidence § 1040 (1) (1964) the appropriate rule is stated:
 "[A] party who has introduced certain evidence cannot subsequently object that . . . it should not be given such consideration as its natural probative value entitled it to, or that it is insufficient to sustain a judgment based thereon." (Footnotes omitted.)
Moreover, to the extent that the appellants contend that this resolution impaired their obligations under the lease which they executed, their argument appears to be directed at the entire regulatory scheme envisioned by the original moratorium resolution instead of just the resolution of July 5, 1978. Completely disregarding the alleged amendatory nature of the July 5 resolution, the moratorium resolution and its administration are manifestations of the sovereign's paramount police power which has long been held to "embrace the protection of the lives, health, and the property of the citizens . . ." Van Hook v. City of Selma, 70 Ala. 361, 363
(1881) and to which private contractual obligations must yield.
 "[T]he liberty of contract is not universal, and is subject to restrictions . . . in the exercise of [the] power to protect the safety and welfare of the people. There are manifold restraints to which every person is subject for the common good."
(Citations omitted.) (Boone v. State, 170 Ala. 57, 63,54 So. 109, 111 (1911).
 "The police power sometimes is superior to . . . personal and property rights. They not infrequently yield to the general welfare."
Pickett v. Matthews, 238 Ala. 542, 546, 192 So. 261, 264
(1939).
Thus, we hold that neither the July 5, 1978, resolution nor the moratorium resolution impaired the contractual obligations embodied in the lease between Peterson and American Fitness Center, Inc.
 III
The crux of the appellants' due process and equal protection argument is that the moratorium resolutions do not provide for a hearing before the administrative board; the resolutions fix no ascertainable standard by which sewer allocations are determined; those standards that are actually used by the Sewer Moratorium Committee are not reasonably calculated to achieve the stated purpose and that the standard, as applied, constituted an arbitrary and capricious use of administrative discretion.
While it may be conceded that the moratorium resolution and the amendments *Page 843 
thereto do not in haec verba contain provisions for a hearing or set out appropriate standards for determining the sewer allocations, we do not consider these omissions objectionable because the record is replete with evidence that the appellants' application for a sewer allocation was treated in a manner entirely consistent with procedural due process. InAlmon v. Morgan County, 245 Ala. 241, 16 So.2d 511 (1944), this Court noted that
 ". . . the constitutional requirement of due process does not require judicial determination by a court . . . but it may be had by an administrative tribunal, and in a summary manner, provided . . . procedural due process is accorded. . . ."
* * * * * *
 "Procedural due process, broadly speaking, contemplates the rudimentary requirements of fair play . . . which include a fair and open hearing before a legally constituted court or other authority, with notice and opportunity to present evidence and argument; representation by counsel if desired; and information as to the claims of the opposing party, with reasonable opportunity to controvert them." (Citations omitted.)
245 Ala. at 246, 16 So.2d at 515.
In this case, the record reveals that the appellants, by counsel, applied to the Sewer Moratorium Committee for a sewer allocation. The record indicates that not only did the Committee consider the evidence presented by the appellants, but they also undertook an independent investigation.
A letter dated April 17, 1978, from Mr. Bobby Lowe to the attorney for one of the appellants is enlightening as to the exact procedure employed by the Sewer Moratorium Committee in determining this sewer allocation.
 "The Jefferson County Sewer Moratorium Committee met to consider your application on behalf of Mr. B.D. Peterson for an exception to the Sewer Moratorium on the Patton System.
 By letter of March 27, 1978, you informed the Committee that the subject property had been used originally for a restaurant which was abandoned after approximately two years. You advised that following the restaurant the property was occupied by Life Insurance Company of America for a number of years and that during the period of its occupancy the highest water consumption was 177,750 gallons for a three-month period. That consumption figure is so out of line with the usual water consumption for that type of activity that we checked the figures ourselves. Our investigation of the water records for the subject property includes the five-year period beginning February 1973 through February 1978. The water consumption records reflect a high of 397,500 gallons to a low of 750 gallons per quarter. There were no records of water consumption from February 1977 to date. Included within the records are three quarters of 397,500 gallons, 177,750 gallons, and 172,500 gallons respectively. Those figures are so out of line with the other quarterly water consumption figures that we requested an explanation from the Water Works Board. The Board advised us that their records reflect that there was a water leak on the premises for the above referenced three quarters which accounts for those quarters being so out of line.
 The Committee also considered the fact that the last occupant of the property went through a phase-out process extending over several months.
 The Committee agrees that the moratorium contemplates a right in the property owner for continued use of its ordinary sewage use, even though the premises have been vacant for more than a year. Under the foregoing facts, the Committee concluded that it would be reasonable to use the ordinary sewage use of the property for a five-year period in the calculation. Because of the fact that the water consumption figures for three periods were grossly affected by a leak in the water system, the Committee concluded it would be reasonable and proper to strike those quarters from the calculation. On the other hand, the Committee also determined that it was fair and reasonable to *Page 844 
delete the three lowest water consumption quarters in making the calculation because of the phasing out of the last occupant. The deletion of those six quarters results in an average consumption of 42,545 gallons per quarter which translates into a figure of 471 gallons per day for the period.
 Accordingly, it is the conclusion and recommendation of the Committee that the subject property be approved for sewage allocation of 471 gallons per day."
The appellants appealed this allocation to Mr. Chriss Doss, the Jefferson County Commissioner of Public Works and he, by letter of May 5, 1978, approved the recommendation of the Sewer Moratorium Commission.
We believe that the record supplies ample evidence that the appellants were accorded at least minimal due process at both the initial application proceeding and the subsequent appeal. In his letter, Mr. Doss indicated that he considered the appellants' evidence and arguments and that he reviewed the Committee's recommendation in light of the appellants' evidence and argument, however he agreed with the Committee's recommendation. Therefore we believe that even though the moratorium resolution did not specify the hearing procedure and the allocation standard, the Committee complied with procedural due process requirements in their treatment of the appellants' application.
We also believe that the standard employed by the Committee was reasonably calculated to achieve the stated purpose of the moratorium resolution, i.e., to regulate the volume of sewage treated at the Patton Creek plant. The appellants presented evidence which tended to indicate that the effluent released from the proposed physical fitness center would be much easier to treat than sewage from other commercial establishments,e.g., restaurants and laundries. There was also evidence that up to 50% of the water put into the physical fitness center would be lost due to evaporation. Assuming arguendo that all of this uncontroverted evidence is true, we believe that the Committee, in the exercise of its discretion, could have reasonably decided that the volume allocation method employed was the most cost-effective means of determining sewer allocations for the area treated by the Patton Creek plant. Stated simply, the purpose of the sewer moratorium was to regulate the volume of sewage treated at the Patton Creek plant and the Committee chose to use the volume of water previously used to service this facility as the touchstone for determining the allocation in this case. As noted in Custred, supra, arbitrariness and capriciousness are equivalent to gross abuse and since we do not find a gross abuse of discretion on the part of the Sewer Moratorium Committee, we deem it inappropriate to second-guess their judgment as to "`matters within the technical field of their duties and power.'"
 IV
The appellants finally contend that the action of the trial court in granting a motion for a directed verdict was improper since they presented more than a scintilla of evidence to support their claims. Rule 50 (c), ARCP. While their contention may be correct when there is a jury trial, this case was tried in a non-jury setting and we consider the appellees' motion to dismiss under Rule 41 (b), ARCP. Chaney, supra. Here the trial judge is the trier of fact and he weighs the evidence and credibility of witnesses. Committee Comments, Rule 41, ARCP. This rule, considered in conjunction with ore tenus rule allows us to reverse the judgment of the trial court only where that judgment is palpably erroneous.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and BLOODWORTH, ALMON, EMBRY and BEATTY, JJ., concur.
FAULKNER and JONES, JJ., dissent.
MADDOX and SHORES, JJ., not sitting.
[1] 360 So.2d 285 (Ala. 1978) *Page 845