The appellee, plaintiff below, Nathan Rodgers Construction and Realty Corp., filed a petition for a writ of mandamus against Charles Pritchett, the maintenance mechanical inspector of the City of Saraland, and Richard Prescott, the mayor of Saraland, as well as five of the city's councilmen to show cause why they should not grant permission for the connection of plaintiff's sixteen-unit apartment complex to the sanitary sewer system of the City of Saraland. Nathan Rodgers, president of the plaintiff corporation, testified that he first appeared before the council and requested permission to connect the plaintiff's sixteen-unit apartment complex to the sanitary sewer system in the City of Saraland on December 28, 1978. On that date his request was tabled. Rodgers also attended the council's meetings on January 15, 16, and 18. No decision was made at these meetings because too few council members attended to meet the quorum required for a vote. Mr. Rodgers also attended the January 25, 1979, meeting of the council, at which no action was taken on his request, and the mayor informed him that taking no action was equivalent to denying his request. Rodgers testified that he had a telephone conversation with the mayor on January 3, 1979, during which the mayor led him to believe that there would be no problem with obtaining the council's permission to connect his apartments to the sewer system. After this conversation, Rodgers obtained financing for his apartments. Rodgers testified that Mr. Isherwood, the city engineer, and several of the city councilmen told him that there would be no problem with obtaining a permit: "It's just a matter of formality of going before the council, then, voting on it and, then, the permit being issued."
The minutes of the special meeting of the Saraland City Council on October 3, 1977, show that a motion was passed "that no apartments be allowed to tie into our sewer whether it is available or not until the council can check to see if it is feasible." The same minutes show that a Mr. Palmer appeared after the motion was adopted and requested that he be allowed to tie his apartment on Richie Street into the sewer system of Saraland. The record shows, and the city clerk, Mrs. Potter, testified, that Mr. Palmer's request was granted after that motion had passed. In November of 1978, Mr. Isherwood wrote the council and recommended that the city declare a moratorium on all future requests for connection to the sanitary sewer system. The Circuit Court of Mobile County found that approximately 600 more units could be attached to the sewer system without creating a health problem and that plaintiff's proposed apartment complex would be equivalent to about seven units.
The trial court further found that:
 The city council has not declared a moratorium as recommended by the Engineer nor adopted any motion or resolution relating thereto.
 The 600 units which can still be connected to the sanitary sewer system have not been assigned by any motion, ordinance or resolution of the City Council to the property owners involved in the current sewer project and they are available to be issued to the public at large.
 In addition, on or about January 18, 1979, Nathan J. Rodgers, President of the Plaintiff corporation, met with Mayor Richard H. Prescott, Jr., and some of the City Councilmen and was led to believe that the request of the Plaintiff corporation for permission to connect to said sanitary sewer system would be granted at the next meeting of the City Council to be held on January 25, 1979, and acting on this belief the Plaintiff corporation completed its permanent financing for said apartment complex project and thereby incurred substantial liability, and the defendant's subsequent refusal to permit the Plaintiff to connect to said sanitary sewer system and to issue the building permit applied for, which are mere ministerial functions or duties required to be performed by the Defendants, although the same had been demanded, are actions which are arbitrary, capricious and without lawful right. *Page 547 
On April 9, 1979, the circuit judge issued a peremptory writ of mandamus to the mayor of Saraland and several council members ordering them to grant the plaintiff, Nathan Rodgers Construction and Realty Corp., permission to connect its apartments to the sanitary sewer system of the City of Saraland. The mayor and councilmen brought this appeal, alleging that it was error for the trial court to issue the writ of mandamus.
The appellant argues, and we agree, that the petition must on its face state facts which show that the petitioner is entitled to have this extraordinary writ granted. Ex parte Alabama PowerCo., 280 Ala. 586, 196 So.2d 702 (1967); Lassiter v. Werneth,275 Ala. 555, 156 So.2d 647 (1963); Guaranty FundingCorporation v. Bolling, 288 Ala. 319, 260 So.2d 589 (1972). "Mandamus is an extraordinary legal remedy, grantable only when petitioner show[s] a clear, specific legal right for the enforcement of which there is no other adequate remedy." AllAmerican Life and Casualty Co. v. Moore, 286 Ala. 492,242 So.2d 661 (1970). See also: Campbell v. City of Hueytown,289 Ala. 388, 268 So.2d 3 (1972). The appellant contends that the petition in the instant case does not meet the requirements established by this court for a mandamus to issue. We disagree.
The application for mandamus in the instant case avers that the decision of the city council to reject the request of Nathan Rodgers Construction and Realty Corp., to connect its apartments to the sanitary sewer system was made without the aid of reasonable regulations concerning health and sanitation, and without any statement of the reasons for denying the building permit and that the decision was thus arbitrary and capricious. These allegations, if supported by proof, are sufficient to require the issuance of a writ of mandamus because though a city may regulate matters of health and sanitation through reasonable ordinances or resolutions, it may not regulate on an arbitrary case-by-case basis. Code 1975, §11-47-131, entitled "Powers as to health, sanitation and quarantine generally," reads:
 In addition to the powers granted to them by the applicable provisions of this title or any other provisions of law, all cities and towns of this state shall have the following powers, and the councils or other governing bodies of such cities and towns May Provide By Ordinance Or Resolution for the exercise or enforcement of the same:
 (1) To prevent the introduction of contagious, infectious or pestilential diseases into such cities or towns;
 (2) To establish and regulate a sufficient quarantine, not inconsistent with laws of the state, in the towns and cities and within the police jurisdiction thereof and to punish any breach of quarantine law;
 (3) To Adopt Such Ordinances And Regulations As The Council Or Other Governing Body May Deem Necessary To Insure Good Sanitary Condition in public places or in private premises in the cities and towns; and
 (4) To prescribe the duties and fix the salaries and compensation for such health officials as they may deem necessary.
Code 1975, § 11-47-131 (emphasis added).
This statute is a reenactment of previous statutes (Code 1940, Tit. 37 §§ 491, 492) which codified the judicially created principle that a state, pursuant to its police power, may regulate for the protection of its citizens' health. This concept, however, is not a license to abuse the police power by applying it capriciously and arbitrarily.
 Where a statute confers on a municipality the power to regulate the use of sewers, and neither defines the limits of that power nor prescribes the manner of its exercise, the municipality is necessarily invested with power to exercise its discretion, and the courts will not interfere with such action Unless It Appears To Be Unreasonable Or Arbitrary.
64 C.J.S. Municipal Corporations § 1805, p. 265, (1950) (emphasis added). *Page 548 
Appellant argues that the council's decision to grant or deny a permit is discretionary, and the trial court's finding that the decision was ministerial is in error. Whether that decision was discretionary or ministerial, it is clear that the council can not exercise its discretion in an arbitrary manner. Appellant argues mandamus will not lie to order a person to exercise his discretion in a particular manner. We agree; however, mandamus will lie to order an official not to exercise his discretion in an arbitrary or capricious manner. In Fosheev. State, 210 Ala. 155, 97 So. 565 (1923), this court held:
 As a general rule a writ of mandamus will not issue to review an exercise of judicial or quasi judicial discretion, and this rule applies to the approval of official bond. Payne v. Spragins, 207 Ala. 264, 92 So. 466; Mobile Co. v. Cleveland, 76 Ala. 321; Ex parte Harris, 52 Ala. 87, 23 Am.Rep. 559.
 This rule, however, has an exception in this jurisdiction, for in some cases The Writ of Mandamus Has Been Employed to correct errors of inferior tribunals, and to prevent a failure of justice where there is a clear right and there is an absence of any other adequate remedy, and it has also been employed To Prevent An Abuse Of Discretion, Or To Correct An Arbitrary Action Outside Of The Exercise Of a Reasonable Discretion. 26 Cyc. 189; Wilson v. Duncan, 114 Ala. 659, 21 So. 1017; Ex parte Tower Mfg. Co., 103 Ala. 415, 15 So. 836; Ex parte Dowe, 54 Ala. 258.
Foshee v. State, 210 Ala. at 156, 157, 97 So. at 566 (emphasis added). See also: Williams v. Board of Dental Examiners,222 Ala. 411, 133 So. 11 (1931); Katz v. Alabama State Board ofMedical Examiners, 351 So.2d 890 (Ala. 1977).
Clearly, the city has the power to regulate for the protection of the health of its citizens, but that power can not be exercised arbitrarily. In this case the city had adopted no moratorium on connections to its sewer system, but was proceeding to grant or deny these connections on a case-by-case basis. This was an abuse of the discretion placed with the city council.
When the trial court hears evidence ore tenus, its conclusions will not be disturbed on appeal unless palpably erroneous. Rice v. Hill, 278 Ala. 342, 178 So.2d 168 (1965);Custred v. Jefferson County, 360 So.2d 285 (Ala. 1978).Peterson v. Jefferson County, 372 So.2d 839 (Ala. 1979). The record amply supports the trial court's finding that the council acted arbitrarily and capriciously in denying this permit to Nathan Rodgers Construction and Realty Corp. Based on that finding, the trial court properly issued the writ.
AFFIRMED.
BLOODWORTH, FAULKNER, ALMON and EMBRY, JJ., concur.