These are consolidated cases arising from Jefferson County's moratorium on sewer connections in the area served by the Shades Creek Waste Water Treatment Plant (Shades Creek area).
Both plaintiffs filed suit against Jefferson County (County) after the latter denied their applications for sewer impact connection permits for facilities in the Shades Creek area. After ore tenus proceedings, the trial court rendered judgments in favor of the County as to both plaintiffs.
The plaintiffs appeal. We affirm.
By Local Ordinance 689, one must obtain a sewer impact connection permit in Jefferson County as a condition precedent to connecting facilities to the sewer. Such requirement used to be more complicated, however, if the facilities for which a permit was sought were located in the Shades Creek area of the County because of a moratorium in effect on sewer connections in that area.
During the 1970's the Environmental Protection Agency (EPA) monitored the discharge from the sewage treatment plant servicing the Shades Creek area. The EPA established discharge limitations which the plant could not meet.
The County, therefore, placed a moratorium on sewer connections in the Shades Creek area until it could increase the sewage treatment capacity of the Shades Creek plant. Because it apparently realized that exceptions to the moratorium would have to be made, the County established a Sewer Moratorium Committee (Committee) to administer the moratorium. Thereafter, the County would not issue a sewer impact connection permit for facilities in the Shades Creek area without the prior approval of the Committee.
In September 1983, Ordinance 689 was amended to increase the rate charged for a sewer impact connection permit from $37.50 per fixture to $100.00 per fixture — effective November 1, 1983.
On October 31, 1983, one day before the permit rate increase, Regal Development *Page 198 
Company (Regal), a general partnership which develops apartments, filed an application for a sewer impact connection permit for the construction of a 220-unit apartment complex in the Shades Creek area. Regal made such application in the office of the County's senior sewer service representative — apparently the office designated for making application for a permit. The application was denied.
At the same time that Regal made application for a sewer permit, John F. DeBuys, Jr., an attorney representing Regal, filed an application for a permit for his house in the Shades Creek area, which had apparently been recently built. His application was also denied.
Neither Regal nor DeBuys had presented their permit requests to the Committee or obtained its approval before making application on October 31, 1983. The record indicates that DeBuys declined the invitation of the County attorney to present the permit requests, or applications, to the Committee. The plaintiffs filed the present suits against the County on the same day they applied for the permits, October 31, 1983.
 I
On appeal both plaintiffs contend that the facilities, or construction projects, for which they sought sewer impact connection permits were not subject to the sewer connection moratorium and that the trial court thus erred in concluding that the County correctly denied them permits due to the moratorium. We disagree.
The moratorium prohibits sewer connections in the Shades Creek area. It defines a sewer connection as any form of connection, reconnection or expansion of "properties connected to the system which results in any increase of flow in the sewage system (emphasis supplied)." The plaintiffs contend that their construction projects were not within the terms of the moratorium because they would not increase the flow in the sewage system.
The record reveals that, when the senior sewer service representative denied their permit applications, the plaintiffs retendered the permit fees and orally proposed that the County issue them what the plaintiffs call a "conditional permit." The plaintiffs requested that they be issued permits at the lower rate of $37.50 per fixture on the condition that they would "not tie on to the sewer until such time as the moratorium had been lifted."
The plaintiffs contend that, because they conveyed their intent to the County not to connect their pipes to the sewer until the moratorium was lifted, their facilities could not possibly increase the flow in the sewage system and, therefore, were not subject to the moratorium.
Although such an interpretation of the moratorium certainly appears logical to this court, whether the moratorium should be so interpreted need not be addressed because it appears that the plaintiffs did not properly communicate to the County their intent to cap their pipes until the moratorium was lifted.
A review of the written permit applications filed with the senior sewer service representative makes no mention of the plaintiffs' intent to cap, or "stub-out" their pipes until the moratorium was lifted. The plaintiffs made only oral communication of such intent before filing suit against the County. Moreover, such intent was not properly communicated to the Committee, whose approval was necessary for the issuance of the sewer permits. The plaintiffs declined the County's offer to present their permit requests to the Committee.
Under such circumstances we find no error in the trial court's determination that the plaintiffs' construction projects for which the permits were sought were subject to the moratorium.
The plaintiffs further contend, however, that the Committee has on numerous occasions recognized exceptions to the moratorium where applicants have agreed to stub-out or cap their pipes, as the plaintiffs offered to do. Therefore, the plaintiffs contend that the County's denial of their permit applications was arbitrary and capricious. *Page 199 
We disagree. The record indicates that, while the Committee did recognize exceptions to the moratorium on occasion where an applicant agreed to cap his pipes, in each case where it did so, the applicant presented his request to the Committee for approval. Here, the plaintiffs refused to present their permit requests to the Committee before filing the instant suits, although the County's attorney offered them the opportunity to do so.
Under such circumstances we find the plaintiffs' contention that the County acted arbitrarily and capriciously in denying their applications to be without merit.
The plaintiffs argue, however, that they were not required to exhaust their administrative remedies, i.e., to present their permit requests to the Committee, because to do so would have been futile.
While it is true, as a general principle of law, that one need not exhaust his administrative remedies if it would be futile to do so, see City of Gadsden v. Entrekin, 387 So.2d 829
(Ala. 1980), we find such principle to be inapplicable to the present case.
In our opinion the record does not support the plaintiffs' contention that it would have been futile for them to have presented their permit requests to the Committee. Such contention is based solely on the fact that DeBuys separately discussed the permit requests with two or three individuals who are members of the Committee and who opined that the "conditional permits" the plaintiffs sought were not "acceptable." We find that such evidence falls far short of that required to excuse an individual from following proper administrative processes where to do so would be futile.
We would further note that the evidence in these cases was presented to the trial court ore tenus. Its judgment is, therefore, presumed to be correct and will not be set aside unless palpably erroneous or without supporting evidence.Clardy v. Capital City Asphalt Co., 477 So.2d 350 (Ala. 1985);Custred v. Jefferson County, 360 So.2d 285 (Ala. 1978). We find that the evidence in these two cases fully supports the determination by the trial court that the actions of the Committee with regard to the plaintiffs was not arbitrary and capricious.
 II
The plaintiffs further contend that they were denied due process by the County's failure to promulgate and apply ascertainable standards and procedures for the Committee to use in making determinations on applications for sewer impact connection permits.
Once again, the fact that the plaintiffs refused to go before the Committee to present their permit requests causes their argument to fail. The plaintiffs have no right to attack the standards used by the Committee in making determinations on permit applications when they refused to give the Committee the opportunity to apply those standards to their requests.
We would note, however, that at least three cases arising from determinations of the Committee have been before the Alabama Supreme Court. Ramer v. City of Hoover, 437 So.2d 455
(Ala. 1983); Peterson v. Jefferson County, 372 So.2d 839 (Ala. 1979); Custred v. Jefferson County, 360 So.2d 285 (Ala. 1978). In none of these cases did our supreme court question the standards used by the Committee or the authority of the Committee to make determinations under the moratorium.
 III
Regal makes an additional contention on appeal pertaining to amendments to its complaint which were disallowed, or stricken, by the trial court.
The record reveals that, on the day the trial of the case began, prior to the taking of testimony Regal filed with the trial court its third and fourth amendments to the complaint, by which it sought to add claims under 42 U.S.C. § 1983 (1981) for the alleged denial of due process by the County. The County objected strongly, and the trial court refused to allow Regal *Page 200 
to amend, finding that the amendments came too late.
Whether to allow Regal to amend its complaint under Rule 15(a), Alabama Rules of Civil Procedure, was within the discretion of the trial court. Dean v. Sfakianos,472 So.2d 1009 (Ala. 1985); Stallings v. Angelica Uniform Co.,388 So.2d 942 (Ala. 1980).
Regal has shown no abuse of that discretion. Regal initiated suit on October 31, 1983. Thereafter, there was virtually no activity in the case until August 9, 1985, when Regal filed a motion to compel the production of documents. The hearing date of September 23, 1985, had been set by the trial court the previous May. On September 13, 1985, approximately one week prior to trial, Regal sought to amend its complaint for the second time to add a § 1983 claim. The County objected, and the trial court disallowed the amendment. Then, on the day of the trial, Regal again attempted to add a § 1983 claim.
Regal had had ample opportunity to amend its complaint to add a § 1983 claim during the almost two years preceding the trial of the case. The trial court did not abuse its discretion in determining that the amendments that Regal sought to make on the day of the trial came too late.
Regal contends, however, that, despite the fact that it was not allowed to amend its complaint, evidence establishing its § 1983 claim was presented at the trial. It, therefore, contends that the trial court erred in refusing to amend the pleadings to conform to that evidence under Rule 15(b), A.R.Civ.P. We disagree.
The complaint already stated a cause of action for the alleged denial of due process by the County, the same claim that Regal sought to make the basis of a § 1983 cause of action. Any evidence introduced in support of that claim would understandably have been considered by the County as pertaining to Regal's original due process contentions, and, therefore, the County would not have objected to such evidence.
Under such circumstances we do not think the County's consent to the trial of Regal's § 1983 claim should be implied or that the trial court erred in failing to amend the pleadings in accordance with Rule 15(b), A.R.Civ.P. Cf. Hawk v. BavarianMotor Works, 342 So.2d 355 (Ala. 1977).
In view of the above, the trial court's decision in cases Civ. 5752 and Civ. 5753 are due to be affirmed.
AFFIRMED.
BRADLEY, P.J., and INGRAM, J., concur.