CRAWLEY, Presiding Judge.
Presley Roofing & Construction Company, Inc. (“Presley Roofing”), appealed to the Alabama Supreme Court from the circuit court’s denial of its petition for a writ of mandamus directed to the clerk of the City of Prichard (“the City”) seeking to have the clerk reissue a business license that the City had previously revoked. The supreme court transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
On June 2, 2005, Larry Presley, the owner of Presley Roofing, applied to the Mining and Reclamation Division of the State Department of Industrial Relations (“DIR”) for a permit to conduct surface mining for dirt on property he owned in the police jurisdiction of the City. DIR subsequently notified Presley that his application was incomplete and that he would have to submit, among other things, proof that he had obtained a business license from the City.
On June 23, 2005, Presley applied to the City for a business license to operate a dirt pit on property located within the police jurisdiction but outside the corporate limits of the City. Presley testified that, upon instructions from a clerk in the City’s business-license office, he filled out an application form and presented it to the clerk.
At the top of the form, entitled “Application for City Business License,” there are spaces for entering the business name, the business address, and the type of license requested, as well as the business owner’s name, address, telephone number, Social Security number, and driver’s license number. At the bottom of the application form, the following notation appears in all capital letters: “NOTE: CERTIFICATIONS ONE AND TWO (BELOW) MUST BE SIGNED BEFORE THIS LICENSE WILL BE ISSUED.” The first “certification” consists of the applicant’s statement that the information provided in the application is true and correct, fol *1266 lowed by a space for acknowledgment by a notary public. The second “certification,” which appears on the reverse side of the application form, consists of spaces indicating approval (or disapproval) of the application by two entities: the Fire Marshall and the Inspection Department. Finally, the form contains a section indicating that the application has been referred to one of three entities: the Board of Adjustment and Appeals; the Zoning Commission; or the Planning Commission.
Gene W. Cain, a business-license clerk for the City, testified that he received Presley Roofing’s business-license application on June 23, 2005, that he wrote “P.J.,” indicating “police jurisdiction,” on the application form, and that he issued the license upon Presley’s payment of the fee. Cain testified that he did not require Presley to complete the certifications at the bottom or on the reverse side of the application form. Cain explained that many business-license applications arrived by mail, in which case, he said, the applicant’s signature was required to be notarized, but, he stated, he had been trained not to require a notarized signature if the applicant appeared in person to complete the application form. Cain further explained that, because the property was located outside the city limits, he did not think the “certifications” on the reverse side of the application form applied. Cain conceded that, although he had processed applications for the renewal of licenses to operate dirt pits, he had never handled an initial application to license a dirt pit before Presley Roofing presented its application in this case.
After Presley Roofing received a business license from the City, Presley resubmitted his application to DIR for a surface-mining permit, this time enclosing a copy of the business license. On July 11, 2005, DIR issued the permit. On July 12, 2005, the City wrote Presley a letter stating that it had issued the business license in error and that it was revoking the license.[1] When Presley inquired why the license was being revoked, he was not told that there were any deficiencies in the application. Instead, he was informed that “the Mayor ... didn’t want any more dirt pits in the police or fire jurisdiction.”
Sammy Green, the Code enforcement officer for the City, testified that in late June 2005 he met with the residents of two different subdivisions who had heard that “someone was trying to start a dirt pit operation” in the area and who had begun a petition drive opposing the operation. Green sent copies of the petitions to DIR, and then he talked to City Clerk Darlene Lewis, Cain, and the mayor. He informed those City officials that Presley’s license “did not go through the proper procedure.” At trial, Green testified that the proper procedure was as follows:
“Once [Presley Roofing] makes application, then it goes to the Inspection Department, and the Inspection Department determines what other steps need to be taken. At that time, [because the property was located] in the police jurisdiction, [the application] needed to go before the Planning Commission.
“See, a dirt pit is considered a special exception where you would have to have approval from the people that stay in the area.... And if there was no opposition at the time of the hearing, then that license would be ... granted. In this case, that never happened. The application was just filled out, and the license *1267 was issued; so it never did complete any of the steps that are set in place for dirt pits or landfills or junk yards. All those are considered special exceptions.... ”
Green acknowledged that the City’s zoning ordinances did not apply outside the city limits, but, he said, the City’s planning jurisdiction extended beyond its zoning jurisdiction. He said that the Planning Commission heard issues of land use within the City’s police jurisdiction. When asked whether the procedure he outlined was contained in any ordinance or written policy of the City, Green stated that he did not know.
I.
Citing Pritchett v. Nathan Rodgers Construction & Realty Corp., 379 So.2d 545 (Ala.1979), Presley Roofing argues that the City’s action revoking its business license was arbitrary and capricious because, it argues, the City took that action without reference to the authority of a state statute, a local ordinance, or any formal act by the City requiring that all business-license applications be approved by the Inspection Department and, further requiring that, if the business is a dirt pit, that the application also be approved by the Planning Commission.
Pritchett, upon which Presley Roofing relies for its arbitrary-and-capricious argument, is inapt. In Pritchett, the owner of an apartment complex applied for permission from the City of Saraland to connect the complex to the city’s sewer system. Despite the fact that the owner was led to believe by various city officials that his request would be granted, the city council initially failed to act on the request. Then, at a meeting of the city council on October 3, 1977, the council voted that no apartments would be allowed to tie into the system without a feasibility study. At that same meeting, however, another apartment owner requested that he be allowed to connect to the sewer system and, without conducting a feasibility study, the city council approved the request. The Alabama Supreme Court determined that because the city had acted “without the aid of reasonable regulations ... and without any statement of the reasons for denying” one request and granting another, its actions were arbitrary. Pritchett, 379 So.2d at 547. In the present case, the City gave reasons for its revocation of the license and there was no other applicant who, although similarly situated, was treated differently from Presley Roofing.
We acknowledge that, at trial, the City never referred to, quoted from, or introduced into evidence any City ordinance,[2] and, likewise on appeal, the City has not cited any ordinance relating to the proper procedure for obtaining a license to operate a business within the police jurisdiction of the City. The argument by Presley Roofing, however, overlooks the fact that the City did not have the burden of showing that Presley Roofing had no legal right to the license. Instead, as the petitioner for a writ of mandamus, Presley Roofing had the burden of showing that it *1268 did have a clear legal right to the relief it sought.
“ ‘The writ of mandamus is a drastic and extraordinary writ, to be “issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.” Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993); see also Ex parte Ziglar, 669 So.2d 133, 134 (Ala.1995).’ Ex parte Carter, ... 807 So.2d 534 at 536 [ (Ala.2001) ].”
Ex parte McWilliams, 812 So.2d 318, 321 (Ala.2001).
The record suggests that the City had a procedure for obtaining a license to operate a business within the City’s police jurisdiction. The “Application for City Business License,” and the testimony of Green indicate that the procedure was outlined on the application form and that the procedure was not followed in this case. The City’s failure to cite an ordinance as the underpinning for its procedure (and as the basis for its revocation of the license) did not relieve Presley Roofing of its burden to show that it had a clear legal right to the license.
II.
Presley Roofing argues that the evidence indicates that the proper procedure for obtaining a business license was followed in this case. Presley Roofing points to the testimony of Cain, asserting that because Cain believed it was unnecessary to route the license application to the Inspection Department or to the Planning Commission for approval, those steps were not required. Presley Roofing also points to evidence indicating that, before it filed its mandamus petition in the circuit court, no City official had raised a question with regard to the alleged deficiencies in the license application that, the City argued at trial, served as the basis for revoking the license.
Those assertions are essentially equitable-estoppel arguments. However, “ ‘ “[t]he doctrine of equitable estoppel is not a bar to the correction ... of a mistake of law.” ’ ” State Highway Dep’t v. Headrick Outdoor Advertising, Inc., 594 So.2d 1202, 1205 (Ala.l992)(quoting First Nat’l Bank of Montgomery v. United States, 176 F.Supp. 768, 772 (M.D.Ala.1959), affd, 285 F.2d 123 (5th Cir.1961), quoting in turn Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 182, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957))(emphasis omitted). “Neither the State nor its political subdivisions ... [can] be estopped by doing that which they have no authority to do.” Ex parte Fields, 432 So.2d 1290, 1293 (Ala.1983).
Presley Roofing failed to establish that it was entitled to the license as a matter of law. Therefore, the circuit court correctly denied the petition for the writ of mandamus.
The judgment of the Mobile Circuit Court is affirmed.
AFFIRMED.
THOMPSON and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result, without writing.
BRYAN, J., concurs in the result, with writing.

. DIR subsequently withdrew the permit it had issued to Presley Roofing.

. In the absence of statutory authority, a circuit court cannot take judicial notice of a municipal ordinance. General Motors Acceptance Corp. v. City of Red Bay, 825 So.2d 746, 749-50 (Ala.2002). Section 11-45-11, Ala. Code 1975, provides that "[a]ll courts of the state of Alabama shall take judicial notice of all municipal ordinances of each Class 1 municipality.” Class 1 municipalities are those with a population of 300,000 inhabitants or more. § 11-40-12, Ala.Code 1975. We take judicial notice of the fact that the population of the City is less than 300,000.