Jean Miller, a registered nurse, sued Anniston Lincoln-Mercury-Dodge, Tim Brown, Local Mortgage Company, Inc., and Robert L. Jackson, in a complaint alleging fraud, misrepresentation, outrage, bad faith, and violation of the Truth in Lending Act, 15 U.S.C. § 1601 et seq., in the sale to her of a 1978 Chrysler LeBaron. The case was tried before a jury. At the conclusion of the trial, and after the trial court denied motions for a directed verdict, the jury returned a verdict in favor of Miller and against the defendants jointly and severally, for $50,000.00 on the fraud and misrepresentation claim, and for $500.00 on the Truth-In-Lending claim. Following the entry of judgment, the trial court denied motions for JNOV or in the alternative a new trial.
This case arose out of a complex set of facts. Ms. Miller was in need of an automobile to transport her to and from her places of employment — one in Bowden, Georgia, the other in Heflin, Alabama. But, having been adjudicated a bankrupt, and suffering the stigma of bad credit, she was not a prime candidate for a bank loan. So, she went to Anniston Lincoln-Mercury-Dodge in response to an advertisement to the effect that, if one had been in bankruptcy, that firm would assist in financing the purchase of an automobile. Tim Brown was named in the ad as the person to see.
Ms. Miller went to Brown in December 1980, and, according to her testimony, he agreed to finance an automobile for her through the First National Bank of Anniston by placing a second mortgage on her home. The mortgage was to be for a period of thirty-six months.
Some five months later, Mr. Brown, accompanied by a Mr. Dinsmore, came to Miller's house in order to appraise it. According to Miller, Brown and Dinsmore considered the house sufficient for a loan and again mentioned the terms "second mortgage" and "thirty-six."
On May 2, 1981, Ms. Miller met Mr. Brown at the Anniston Lincoln-Mercury-Dodge car lot. At that time, according to Ms. Miller, Mr. Brown showed her a 1978 Chrysler LeBaron and told her that she could purchase it under the terms they had discussed. Ms. Miller agreed.
Later that evening, Mr. Brown introduced Ms. Miller to a Mr. Robert Jackson. Brown told Ms. Miller that Jackson would *Page 534 
handle the paperwork for the sale. Additionally, according to Ms. Miller, Brown related that the cost of the car, with an allowance for a trade-in, would be $6,300.00, and would be financed over a period of three years.
Mr. Jackson prepared a stack of documents for Ms. Miller to sign and told her she could have the car after signing. Thereafter, Mr. Jackson left the room. Ms. Miller testified that she then reviewed the documents to the best of her ability, and, believing the material terms to be as represented by Brown, signed the documents.
Several months later Ms. Miller discovered that she had not in fact executed a "second mortgage" on her house for a period of 36 months, but rather had signed what is known as a "wrap around mortgage." This type of mortgage, by its terms, amounted to refinancing the balance due on Miller's first home mortgage in addition to the $6,300.00 purchase price of the Chrysler LeBaron. In sum, Miller executed several agreements which obligated her to a note in excess of $40,000.00, with a term of twenty years and six months.
Three issues are presented on appeal for our review. First, whether the trial court properly denied appellants' motions for a directed verdict. Second, whether a new trial or remittitur should be ordered based on excessive punitive damages. Third, whether the trial court's instructions to the jury were erroneous.
Appellants argue that a directed verdict should have been entered on the fraud and misrepresentation count in favor of the defendants, because Miller failed to prove any willful misrepresentations concerning the terms of the loan documents. We disagree.
The definition of "legal fraud" in Alabama may be found in §6-5-101, Code of Ala. (1975):
 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
Regardless of whether the representations were made willfully, recklessly, or mistakenly, actionable fraud may be proved upon showing (1) a false representation, (2) concerning a material existing fact, (3) upon which representation the plaintiff relied, and (4) as a proximate result was damaged. CottonStates Mutual Insurance Co. v. Thigpen, 448 So.2d 314 (Ala. 1984); International Resorts, Inc. v. Lambert, 350 So.2d 391
(Ala. 1977).
The record is replete with testimony which, if believed by the jury, proves a claim for actionable fraud. According to Ms. Miller's testimony, on at least three occasions Mr. Brown represented that he would finance the Chrysler LeBaron with a second mortgage for a period of thirty-six months. Ms. Miller further testified that she relied on these representations upon entering into the transaction. As noted above, the mortgage signed by Ms. Miller was not in fact a second mortgage for a term of 36 months, but rather a wrap around mortgage with a term of more than twenty years. After viewing this evidence in a light most favorable to Miller, we find the evidence presented by her sufficient to withstand a motion for directed verdict. Ex parte Bennett, 426 So.2d 832 (Ala. 1982); see, e.g., International Resorts, Inc. v. Lambert, 350 So.2d 391
(Ala. 1977).
Anniston Lincoln-Mercury-Dodge argues that even if fraud was proven, the evidence presented by Ms. Miller was insufficient to support an award of punitive damages. In order to recover punitive damages, in cases of fraud, the plaintiff must show that a misrepresentation was made with knowledge of its falsity and with an intent to injure. Furthermore, the fraud committed must be gross, malicious, or oppressive. Cecil CrewsChevrolet-Oldsmobile, Inc. v. Williams, 394 So.2d 912 (Ala. 1981).
We find that the evidence presented by Ms. Miller was sufficient to allow the jury to infer a knowledge of falsity and a malicious or oppressive intent *Page 535 
to injure. For instance, according to Ms. Miller's testimony, the misrepresentations were made to Ms. Miller on several occasions. At no time did Brown, Dinsmore, or Jackson ever explain the nature of a wrap around mortgage to Ms. Miller. Lastly, among the several documents signed by Ms. Miller and admitted into evidence, two documents contain the terms and figures repeatedly quoted to Ms. Miller, while other documents obligate her to a wrap around mortgage. We must conclude that the jury could have inferred that the defendants knowingly and intentionally misled Ms. Miller as to the terms of her financial obligations. Accordingly, the award of punitive damages was not improper. See, e.g., Cecil CrewsChevrolet-Oldsmobile, Inc. v. Williams, 394 So.2d at 915.
Likewise, after reviewing the record in its entirety, we do not think the jury's award was based on passion, bias, or any other improper motive. Therefore, we decline to disturb it.U-Haul Co. of Alabama v. Long, 382 So.2d 545 (Ala. 1980).
Regarding appellant's claim that the jury instructions were erroneous, we note that no objections were raised to the instructions. Furthermore, at the conclusion of the trial court's instructions to the jury, counsel for the appellants announced "satisfied." Thus, the alleged error was not preserved for our review. A.R.Civ.P. 51; Walker v. Dutton,401 So.2d 32 (Ala. 1981).
Accordingly, the judgment entered by the trial court on the jury's verdict is affirmed.
AFFIRMED.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.