This is an appeal by plaintiff, Clarence Dean, from a judgment for defendant, Nick Sfakianos, in Dean's action against Sfakianos for breach of contract. We affirm.
In 1980, Reynolds Fast Foods, Inc., was operating a restaurant known as Colonial Fried Chicken in a building located in Ensley and owned by Sfakianos. Plaintiff Clarence Dean and his wife, Carol Ann Dean, purchased all of the outstanding stock in the corporation. On or about February 1, 1980, Dean and his wife entered into a lease agreement with Sfakianos for *Page 1010 
the rent of the building then being occupied by Colonial Fried Chicken.
Reynolds Fast Foods, Inc., paid the rent on a monthly basis throughout 1980, and on or about January 4, 1981, Dean delivered a letter to Sfakianos expressing an intent to renew the lease for an additional year, i.e., from February 1, 1981, through January 31, 1982. Although the receipt of this letter was ultimately disputed, the trial court, during the ore tenus hearing, found that the lease had been renewed for one year.
Desiring to sell Reynolds Fast Foods, Inc., and Colonial Fried Chicken, Dean entered into an agreement with an Aldus Jones, whereby Jones agreed to purchase the restaurant business and equipment of Colonial Fried Chicken, subject to Sfakianos's approval of Jones as a tenant. After Sfakianos explored Jones's business and financial records, he concluded that Jones was not suitable as a subtenant and refused to sublet to him. Another prospective purchaser, James Reddell, was presented. After examining Reddell's business and financial background, Sfakianos also refused to sublet to Reddell.
Sfakianos, meanwhile, had terminated Dean's possessory interest in the leased premises; however, the parties began negotiations, the outcome of which was to allow Dean to remain in possession of the building until about October 14, 1981.
Subsequently, Dean brought this action against Sfakianos, alleging, inter alia, that the lease had provided him with a five-year option to renew, as well as with the right to sublet. Dean alleged that he and Sfakianos had renewed the lease for an additional year,[1] but that the latter had breached this agreement and terminated the lease unlawfully. Dean also alleged that Sfakianos had breached the lease by refusing to allow him to continue his going business and by refusing to allow him to sell it, thereby causing Dean to close his business at substantial financial loss.
Following the trial, held ore tenus without a jury, both parties rested, and arguments of counsel took place. During the course of those arguments with respect to any damage allegedly sustained by Clarence Dean, individually, Clarence Dean (through counsel) moved to amend his complaint by adding as plaintiffs Carol Dean and Reynolds Fast Foods, Inc. This motion was objected to by defendant's counsel. The trial court responded:
 "It seems to me in a situation like this that if you wanted to amend and add the corporation that Mr. Pantazis [defendant's counsel] might very well have wanted to do additional discovery about the status of the corporation, what other liabilities he had, what the standing is. I don't think I can grant the motion now."
Having denied the motion to amend, and after having heard the conclusion of counsel's arguments, the trial court made findings of fact and entered a judgment, in pertinent part as follows:
 "The action is for [the breach of a] five-year renewal, but if a letter of intent was delivered seeking to renew it for one year, Mr. Sfakianos has acknowledged he denies — he denies he received the letter, but he does acknowledge he continued to receive payments, monthly payments, of $500.00 each month during the period from February through June or to June — through the first part of June in payment of rent without any further written requirements from Mr. and Mrs. Dean as to whether or not they were renewing for a year or five years.
 "Sometime around in May or June of 1981, the Deans wished to sell the business or their stock in a company called Reynolds Fast Foods Incorporated doing business as Colonial Fried Chicken. They wished to sell their — either the assets or the stock in that corporation to a purchaser.
 "They located a purchaser whose name was Jones, Aldus Jones. . . . He was not accepted as a tenant by Mr. Sfakianos *Page 1011 
and sometime shortly after that, Mr. Sfakianos, his attorney, Wilbur Silberman, by letter dated June 23, 1981, notified Mr. and Mrs. Dean that the Deans were tenants at sufferance and that the lease had expired on January 31, 1981, and also by that same letter terminated the Deans' possessory interest in the property.
 "Sometime after that, there were a number of letters evidencing negotiations about when the Deans would be required to vacate the property.
 "Ultimately, it was agreed they would vacate the property by October 31.
 "They continued — their corporation, I guess you could say, based on the evidence, their corporation continued to operate the business and stay in the premises until sometime in October when all of the equipment was moved out.
 "At all times, business was being operated by the corporation. The rent was being paid by the checks issued from the corporate account and of course, in September, the Deans presented another prospective purchaser to Mr. Sfakianos.
 "His name was Reddell and he was also rejected, Mr. Sfakianos said, because he had no previous experience in operating a restaurant.
 "Without going into the other issues, respecting whether or not the lease seems to me — that the lease was renewed, whether or not renewal is not — is not legally valid because it does not comply with the Statute of Frauds or whether or not at the time that the letter was originally written by Mr. Silberman, the lease was then in existence and they were not tenants in sufferance — that the Deans were not tenants at sufferance, without going to the question of whether there was an agreement by the Deans to give up any claims they would have as a part of the agreement that they would have until October 31 within which to vacate.
 "I still have this problem with the Plaintiff's claim. First, the Deans were both stockholders of Reynolds Fast Foods Incorporated, the corporation which sustained the damage by not being able to continue in possession of the premises.
 "The second problem — of course, maybe I could argue that they had a sale for their stock and they were unable to affect a sale of their stock because the premises weren't leased.
 "The second problem I have is that even under all the evidence, the most I do see the renewal was for one year. That's what the letter said, so the year would end on January 31, 1982. That would be the end of the year.
 "Mr. Sfakianos, he could even be arbitrary and capricious about not wanting to lease his place after that; couldn't he? He didn't have to lease it after January 31. How could you sell the place to a third party if you could only assure them of possession for about — from July until January, six or seven months at the most is all he could be assured.
 "On the basis of the evidence, I don't believe that you have established with any certainty the damages that were sustained in the case. On that basis, I am going to find in favor of the Defendant. Judgment is rendered in favor of the Defendant."
Dean raises two questions:
(1) Whether the trial court erred in denying Dean's motion to amend; and
(2) Whether the trial court erred by not awarding damages to Clarence Dean as the real party in interest.
As to issue (1), the trial court did not err in denying the plaintiff's motion to amend. Although amendments are to be liberally granted, the trial court is given discretion in the exercise of that liberality. Thus, where the trial on the issues will be delayed or prejudice would result to the opposing party, the trial court may deny the leave to amend. Rule 15, A.R.Civ.P.;Stallings v. Angelica Uniform Co., 388 So.2d 942 (Ala. 1980). No abuse of that discretion is shown here. Plaintiff's theory throughout the trial was that the defendant *Page 1012 
had contracted with plaintiff personally and had breached that contract to the damage of the plaintiff individually. It was only during the exchanges of court and counsel at summation that plaintiff expressed a desire to amend in order to bring in the corporation itself and another stockholder. The trial court's observation, referred to above, disclosed recognition that such new parties would be calculated to inject new issues which would delay the immediate trial of the cause and involve belated discovery, and also apparently recognized that defendant would be unduly prejudiced by such additions, because of the likelihood that defendant was not then fully able to defend against the claims of the new parties. The record does not support any claim of an abuse of discretion in the denial of the amendment.
As to plaintiff's second contention, we must note that the trial court found an absence of proof that plaintiff himself had sustained any damage. The finding of a trial court sitting without a jury is accorded a strong presumption of correctness, and is not to be disturbed unless found to be clearly erroneous and against the great weight of the evidence. The record here supports that finding. Plaintiff Dean claimed damages for defendant's breach of contract. But the contract was not with Dean, but with the corporation. Dean was not the sole stockholder; moreover, under Rule 17 (a), A.R.Civ.P., he does not appear to have been the real party in interest, nor did he sue here in a derivative action under Rule 23.1, A.R.Civ.P. And, finally, the trial court's conclusion on the prospect of damages for the failure of a sale of a business with a six-month lease, any such damage being at most uncertain under these facts, was permissible under the facts shown in the record.
Let the judgment be affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and SHORES, JJ., concur.
[1] The lease was made for a term of one year "w/5 year renewal option at same rate." The trial court interpreted this language NOT to mean five one-year options.