Plaintiff appeals from a judgment in favor of defendants. We affirm.
Mrs. Beatrice Horton was admitted to the Shelby Medical Center ("SMC") on March 14, 1982, after having been diagnosed by Dr. Thomas M. Nolen of the Columbiana Clinic as having either asthmatic bronchitis or pneumonia.[1] Mrs. Horton complained also of irregular menstrual bleeding, specifically that she had bled continuously for over 60 days. A number of tests were performed at SMC, including a chest X-ray that ruled out pneumonia and an EKG that revealed an abnormal T-wave. Mrs. Horton was placed on antibiotics and respiratory therapy for her breathing problems. On March 16, 1982, Mrs. Horton was examined by Dr. Harold J. Hall, who recommended that the patient undergo a total abdominal hysterectomy for the abnormal bleeding. Dr. Hall ordered a surgical consultation with the surgical group of Salter, Gillis, and Salter.[2] Surgery was ordered to ensure against the development of cancer or hemorrhaging. On March 16 and 17, sputum cultures were taken; they showed no infection in the lungs. On March 20, 1982, Dr. Hall determined that Mrs. Horton's lungs were clear enough to go forward with surgery. Dr. Harry L. Phillips, who saw her on the following day, agreed with Dr. Hall's determination. Also, on March 21, 1982, Julia Gibson, a nurse anesthetist, explained to Mrs. Horton the anesthesia *Page 128 
plan for the operation. Mrs. Horton was examined by Dr. Paul Salter III, who obtained her consent to the surgery and determined that she understood what the surgery entailed, by requesting that she repeat, orally, the surgical procedures to be performed; those procedures are discussed below. Later, on March 21, Dr. Kirit Patel, SMC's anesthesiologist, examined Mrs. Horton and completed the pre-anesthesia evaluation. Surgery began on March 22, with Mrs. Horton being re-examined by Dr. Patel and being examined for surgery by Dr. S.P. Gillis — the surgeon who performed the surgery on Mrs. Horton.
The surgery included the following procedures:
1. A dilatation and curettage.
 2. A cervical biopsy, in which the uterus was opened and tissue removed with biopsy forceps.
 3. A total abdominal hysterectomy, in which the uterus was removed through an incision in the abdomen.
 4. A bilateral salpingo oophorectomy, in which both ovaries and tubes were removed.
 5. A Marchall-Marchetti-Krantz procedure, in which the bladder was suspended.
All procedures performed constituted elective surgery. The anesthesia record and the surgeon's record both indicated that there were no complications with the surgery. On March 25, Mrs. Horton began to exhibit symptoms of pulmonary congestion. Her condition became critical, with a decrease in urinary output. On March 27, a retrograde pyelogram was performed, which consists of looking into the bladder with a cystoscope and then inserting a small tube into the opening of each ureter and injecting them with a radiopaque dye and then fluroscoping the dye on its way to the kidney to determine whether a ureter had been damaged during the operation. This test proved negative. Mrs. Horton's condition worsened, requiring her to be transferred to University Hospital in Birmingham for dialysis on March 29, 1982. Mrs. Horton died on April 1, 1982.
An autopsy revealed that Mrs. Horton suffered from severe arteriosclerosis — hardening of the arteries — which affected the inferior mesenteric artery. That artery provides the blood supply for the lower third of the colon; it was apparently jarred during surgery, so that the jarring, combined with a severe loss of body fluids, caused an overall loss in circulation, kidney failure, and shock. Bacteria entered the bloodstream, and infection, septic shock, renal failure, and pulmonary edema later occurred. Mrs. Horton's arteriosclerosis was not evident except through an autopsy. The autopsy revealed no pneumonia in the patient. Plaintiff is the administrator of Mrs. Horton's estate. His complaint alleged that as a result of the treatment received by Mrs. Horton at SMC, she became severely ill and died. He contends that such care fell below the standard of care nationally and in the State of Alabama. He asserted that the surgery exacerbated the lung condition that caused the renal and pulmonary failure, which ultimately caused Mrs. Horton's death.
During the trial, Horton attempted to admit evidence regarding an alleged lack of informed consent on the part of Mrs. Horton and on his own part. Horton failed to plead this theory in the complaint and had not disclosed this theory during discovery. Horton's counsel attempted to amend the complaint at trial, but all defendants objected. The judge sustained all objections and refused to allow any testimony regarding the alleged lack of informed consent.
 I.
The first issue we are presented is whether the trial court erred in excluding testimony pertaining to the alleged lack of consent.
Horton begins his argument with the premise that most medical malpractice cases alleging a lack of informed consent are grounded in negligence. Fain v. Smith, 479 So.2d 1150
(Ala. 1985). He argues that his complaint alleged negligent treatment and that in this State, treatment is defined as everything concerning the care of an injury or a disease. He cites *Page 129 Hester v. Ford, 221 Ala. 592, 130 So. 203 (1930), and Stephensv. Williams, 226 Ala. 534, 147 So. 608 (1933), which, he argues, require a broad interpretation of the word "treatment," and he argues that a broad interpretation would include informed consent. Horton also argues that the trial court's refusal to allow him to enter evidence on this issue was tantamount to a directed verdict and that the refusal violated the standard of Lawler Mobile Homes, Inc. v. Tarver,492 So.2d 297 (Ala. 1986).
In the alternative, Horton argues that he should have been allowed to amend his complaint immediately prior to or during the trial, under Rule 15(b), A.R.Civ.P. He argues thatCrigler v. Salac, 438 So.2d 1375 (Ala. 1983), and Ex ParteReynolds, 436 So.2d 873 (Ala. 1983), mandate a liberal construction of Rule 15(b), and that the purpose of the rule is to allow the parties to state each claim and to have their claims decided on the merits, while ensuring that the parties have adequate notice. Horton contends that through the pleadings, depositions, and other discovery, all defendants had ample notice of his claims, and that the defendants could not have been prejudiced under the standard set out in Bracy v.Sippial Elec. Co., 379 So.2d 582 (Ala. 1980), which is that no prejudice can be found when an amendment merely adds a new or additional theory, if that theory is based upon the same set of facts brought to the attention of the opposing party through the pleadings. In his brief, Horton suggests that the entry of the pre-trial order should not prevent amendment of the complaint, based on Huskey v. W.B. Goodwyn Co., 295 Ala. 1,321 So.2d 645 (1975), which stands for the proposition that the entry of a pre-trial order does not supersede the requirement that amendments should be freely allowed when justice so requires.
Dr. Patel argues that the term "treatment" should not include informed consent; he acknowledges that Hester, supra, proposes a broad interpretation of the term "treatment," but he argues that the inclusion of informed consent within the term "treatment" would be beyond broad and would be ultimately unreasonable and unforeseeable. Dr. Patel refers us to cases from Georgia, wherein that State's appellate courts have drawn a distinction between treatment and informed consent. He cites the following cases in support of this proposition: Simpson v.Dickson, 167 Ga. App. 344, 306 S.E.2d 404 (1983); Parr v.Palmyra Park Hospital, 139 Ga. App. 457, 228 S.E.2d 596 (1975);Young v. Yarn, 136 Ga. App. 737, 222 S.E.2d 113 (1975). In regard to Horton's argument that he should have been allowed to amend his complaint, Dr. Patel responds by arguing that Horton had ample opportunity to disclose the theory of informed consent during the three years of extensive discovery. He further argues that during Horton's deposition, Horton, responding to a question propounded by defense counsel, answered affirmatively that he was satisfied with the explanation of the proposed surgery given his wife by nurse anesthetist Julia Gibson; and he argues that Horton's expert witness, Dr. Ali Shakir, on deposition, did not imply or express a reliance on informed consent as a liability issue. The right to amend a pleading is not absolute, and should be denied when opposing parties would be prejudiced by amendment,Dean v. Sfakianos, 472 So.2d 1009 (Ala. 1985). Dr. Patel argues that if Horton had been allowed to amend, the amendment would have changed Dr. Patel's strategy at trial and would have required him to request a continuance so that he could redepose plaintiff's witnesses and develop the testimony of his own witnesses on the issue. Therefore, he argues that the trial judge had, and should have had, the discretion to deny the amendment, citing Ex parte Reynolds, 436 So.2d 873 (Ala. 1983);Stallings v. Angelica Uniform Co., 388 So.2d 942 (Ala. 1980).
The position of SMC is that if Horton had been allowed to amend his complaint at trial, the lack of informed consent issue would have created a fraud action, which it was unprepared to defend. SMC cites Johnson v. McMurray,461 So.2d 775 (Ala. 1984), in which this Court defined a failure to obtain informed consent as a legal fraud on the patient. Therefore, SMC argues that the judge's refusal to allow the amendment *Page 130 
should be disturbed only for abuse of discretion, Burge v.Jefferson County, 409 So.2d 800 (Ala. 1982); Metropolitan LifeIns. Co. v. Sullen, 413 So.2d 1106 (Ala. 1982), and that any error in the judge's refusal to allow the amendment is harmless error under Rule 61, A.R.Civ.P.
The position of Drs. Hall, Phillips, and Nolen is that liberality in the allowance of an amendment, as required by this Court (see Crigler, supra) cannot be interpreted to include amendments that would unduly delay the trial or prejudice an opposing party. Stead v. Blue Cross Blue Shieldof Alabama, 294 Ala. 3, 310 So.2d 469 (1975). There can be no abuse of discretion in denying the amendment when the amendment would require further discovery, Robinson v. Kierce,513 So.2d 1005 (Ala. 1987); Dean v. Sfakianos, 472 So.2d 1009 (Ala. 1985). If the amendment had been allowed, the defendants would have been forced to request a continuance so that they might procure expert testimony on the issue of informed consent. See Fain, supra.
We essentially agree with the position taken by SMC. We realize that Rule 15, A.R.Civ.P., should be liberally construed to permit amendments when justice so requires. Higgins v.Wal-Mart Stores, Inc., 512 So.2d 766 (Ala. 1987); Dean v.Sfakianos, 472 So.2d 1009 (Ala. 1985). We have also recognized, however, that the trial court is vested with broad discretion in refusing amendments where permitting amendments would unduly delay trial, Dean v. Sfakianos, supra, or would be prejudicial to the opposing party or where there is some other valid reason. Robinson v. Kierce, 513 So.2d 1005 (Ala. 1987). For that reason, we have generally held that a trial court, while it might have properly done otherwise, does not abuse its discretion when, on the day of trial, it refuses an amendment that the proponent has had ample opportunity to bring forth sooner. See Arfor-Brynfield, Inc. v. Huntsville Mall Assocs.,479 So.2d 1146 (Ala. 1985); see also Debuys v. Jefferson County,511 So.2d 196 (Ala.Civ.App. 1987).
In Johnson v. McMurray, 461 So.2d 775 (Ala. 1984), this Court held that, in the medical malpractice context, those claims that involve allegations of lack of informed consent are essentially fraud cases. In that genre of fraud case, however, expert testimony is still necessary to establish adherence to or deviation from the proper standard of care. See Johnson v.McMurray, supra; Fain v. Smith, 479 So.2d 1150 (Ala. 1985). Nevertheless, lack of informed consent cases are different, somewhat, in type from negligent treatment cases: generally speaking, the act of treatment should not occur without the act of obtaining informed consent. If the patient is injured during treatment, his injury will be the result either of the physician's acts during the treatment or of the physician's failure to fully disclose prior to the treatment risks or consequences associated with the treatment. Cf. Fain v. Smith, supra.
In the case at bar, we need only to call attention to two highly significant facts to support our conclusion that the trial court did not abuse its discretion. The first is Mr. Horton's deposition testimony that he felt that the explanation given his wife of the proposed surgery was adequately informative. That being so, the defendants rightly assumed that trial was to be had on the issue of treatment, not informed consent. Second, testimony established that, if the amendment had been permitted, further discovery would have been necessary to secure expert testimony to rebut the lack of informed consent claim. These circumstances provided the trial court with justifiable grounds upon which to refuse the amendment.
 II.
The second issue presented for our review is whether the trial court erred in submitting separate jury verdict forms for each defendant. During the trial of this matter, the judge submitted to the jury a separate verdict form for each defendant and charged the jury on individual negligence, as well as on combined and concurring negligence. The jury was then allowed to deliberate and decide whether one or more of the defendants committed negligent *Page 131 
acts and, if so, whether those negligent acts combined and concurred to cause Mrs. Horton's death.
Rule 51, A.R.Civ.P., is the controlling provision, and it states in part:
 "No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection." (Emphasis added.)
In this case, plaintiff's attorney consented to the submission of several verdict forms, in the following colloquy:
 "MR. COLEMAN: Your Honor, I don't think the plaintiff has any objection. I would like to look at the verdicts. You said seven of them. Is there one for the plaintiff against the defendants?
 "THE COURT: No. They are all separate verdict forms. Any exceptions?
"MR. COLEMAN: No, sir."
We have held that once the jury charge has been accepted by counsel, counsel cannot, on appeal, argue error in the giving or refusal to give a particular charge. See General Sales Co.v. Miller, 454 So.2d 532 (Ala. 1984). Furthermore, the objection to the charge must be specific. See Alabama City Bank ofGadsden v. Vaughn, 413 So.2d 1053 (Ala. 1982). Therefore, Horton did not preserve this issue for appeal. But, assuming arguendo, that he did properly preserve this issue, we would find no error, based on the holding in Whitmore v. First City Nat. Bankof Oxford, 369 So.2d 517 (Ala. 1979):
 "The law does not require any particular form in which a verdict must be rendered so long as it responds substantially to the issues raised. 'All else is form, which the court can supply with or without the consent of the jury.' Wilson v. Federal Land Bank of New Orleans, 230 Ala. 75, 79, 159 So. 493 (1935); see also Hall v. Defoor, 273 Ala. 597, 143 So.2d 449 (1962)."
In the present case, we must conclude that the seven separate verdict forms submitted to the jury did not allow apportionment of the damages and would have allowed recovery against all the defendants. Therefore, they were not submitted in error.
For the foregoing reasons, the judgment of the trial court is due to be, and it hereby is, affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON and STEAGALL, JJ., concur.
[1] Drs. Thomas N. Nolen, Harold J. Hall, and Harry L. Phillips were family practitioners who, in 1982, operated the Columbiana Clinic in Columbiana, Alabama.
[2] Of the surgical group of Salter, Gillis, and Salter, Dr. S.P. Gillis and Dr. Paul Salter III were named as defendants.