This action comes before this Court on consolidated appeals involving alleged fraud in the procurement of products liability insurance insuring the appellee Precision Chipper Corporation (hereinafter "Precision"). The jury returned separate verdicts against Bates Insurance Agency, Inc. (hereinafter "Bates"), in the amount of $875,000 and against E S Facilities, Inc. (hereinafter "E S"), in the amount of $875,000. We affirm.
In late 1981, Precision contacted Bates, a Birmingham independent insurance dealer with whom Precision had dealt for its insurance needs since 1964, seeking products liability insurance for its products. Precision wanted the best insurance possible, and coverage that would leave no gaps. Bates conceded that it understood that Precision wanted "occurrence basis" insurance that would cover liability from occurrences that occurred within the policy period. Bates, along with E S, an insurance broker/wholesaler, informed Precision that there were no such policies available and that the best it could do would be a "claims made" policy available from Beacon Insurance Company (hereinafter "Beacon"), which would base coverage on the time the actual claims were made.
E S was the managing general agent for Beacon and Safety Mutual Casualty Corporation (hereinafter "Safety Mutual") and did the actual writing of the policies. Charles Garrison, vice president of E S, wrote the policy proposal. Garrison included a special claims-made restriction in the policy that would deny coverage if an accident occurred within the policy period but a claim based on that accident was not made until after the policy period had expired. Garrison also included an exclusion in the policy that would exclude from coverage all products made before January 1, 1982. The restriction and the exclusion amounted to a denial of coverage unless the particular *Page 56 
product was made on or after January 1, 1982, and a claim was filed before the end of the policy period — December 31, 1982. The total premium paid by Precision for the 1982 coverage amounted to $90,860. An "umbrella" policy was issued by Safety Mutual that provided that same products liability coverage for any liability in excess of $500,000. This policy contained the same claims-made restrictions. It was undisputed that the 1982 policy was on a claims-made basis.
Late in 1982, Bates came to Precision in an attempt to renew the insurance policy. At this time it was again made clear that Precision desired occurrence-basis insurance coverage. Again Bates informed Precision that the only type policy that was available was the claims-made type policy and recommended renewal of the current policy. Although the evidence is not clear, it appeared that Precision tentatively agreed to the renewal of the policy.
In January 1983, Precision was approached by Trammell-Harper Associates (hereinafter "Trammell-Harper") with a proposal of occurrence-basis coverage for all machines, regardless of the date of manufacture. Precision presented the proposal to Bates and informed it that if its companies were unable to provide similar coverage, then Precision would move its insurance business to Trammell-Harper. Bates, in turn, presented this Trammell-Harper proposal to Garrison at E S. Garrison conveyed to Bates that he would "match" the Trammell-Harper proposal, or said something in words to that effect. Bates informed Precision that they would provide the same occurrence-basis type coverage as Trammell-Harper offered. Precision agreed to allow Bates to keep the account and write the new policy.
The policy Bates actually received from Garrison was not an occurrence-basis policy based on the evaluations of Bates personnel and outside insurance brokers. The policy, while written on an occurrence form, contained substantial changes, endorsements, and restrictions that varied from normal occurrence coverage. The final policy Bates received after changes were made by Garrison still contained the claims-made restrictions, although the restriction on the date of products manufactured was deleted. The actual policy stated in several places that it was a claims-made policy. Garrison's final word on the policy was that he had done everything he could do.
Marshall Culifer, vice president of Bates, reviewed the policy and contacted Garrison. Garrison stated that he knew it was not an occurrence policy and that it could not be. Bates sent written notice to Precision that occurrence coverage was in place. Precision was also sent a written insurance binder which indicated that coverage was on an occurrence basis and that it was a temporary policy to be in effect until the final policy was issued. Precision, however, did not receive a copy of the 1983 policy until some time in 1984, when Beacon began to deny coverage on several claims. A similar umbrella policy was also issued for 1983. During this period, Bates contacted various other insurance companies to see if there was an occurrence-basis policy available on the market to provide Precision with the type of coverage it desired.
Precision was never told of the doubts Bates had as to the current 1983 policy, nor of the attempts to locate broader insurance. Bates purchased the still-available Trammell-Harper occurrence policy for Precision for the 1984 year. However, Bates failed to purchase "tail coverage" which would eliminate the gaps caused by the switch of carriers. Precision was not told of these gaps. The gaps would result where an accident occurred before the new occurrence-basis coverage took effect and a claim was not made until after the 1983 claims-made basis policy (represented as "occurrence-basis") had expired.
In 1984, several lawsuits were filed against Precision based on 1982 and 1983 occurrences. Beacon denied coverage on these claims, as they did not fall within the coverage period. One claim, for example, was based on a 1983 occurrence but was not filed until 1984. Beacon denied coverage, stating that the 1983 policy was a claims-made policy and the claim was not *Page 57 
made until 1984, and, thus, was outside the coverage period. When Beacon denied coverage on these claims, it attached a copy of the 1983 policy to the denial. This was the first time Precision had seen the policy; it subsequently realized it was a claims-made policy rather than an occurrence-basis policy.
On November 20, 1984, Precision filed suit against Bates, E S, Beacon, and National Union Fire Insurance Company ("National Union"), alleging breach of contract, bad faith, and fraud, and seeking reformation of the policy to reflect the true intention of the parties. Precision later filed an amended complaint dismissing National Union, as service had never been made, and adding Safety Mutual as a defendant. In its amended complaint, Precision further alleged wanton and negligent failure to procure insurance coverage. Safety Mutual filed a complaint in intervention and sought a declaratory judgment that its 1982 and 1983 umbrella policies provided no coverage for the suits filed against Precision. Before trial, the claims against Beacon and Safety Mutual were severed by the trial court and the case proceeded to trial against Bates and E S.
At the close of all the evidence, Precision amended its complaint to allege only fraudulent misrepresentation, deceit, and concealment, and negligent failure to procure insurance. These issues were presented to the jury.
The trial court submitted four separate verdict forms to the jury at the close of the trial: one which would allow the jury to return a verdict on behalf of both defendants; one which would permit the jury to return a verdict against one defendant, but not the other; and two separate forms to return verdicts against each defendant. The four verdict forms were agreed upon as requested by the defendants during the charge conference.
The jury returned separate verdicts against each defendant, with one verdict assessing damages against Bates in the amount of $875,000 and the other assessing damages against E S in the amount of $875,000. At the request of counsel, the court inquired of the foreman whether the jury intended to award a total of $875,000 or $875,000 against each defendant for a total of $1,750,000. The foreman indicated that the jury intended to award $875,000 against each defendant. The trial court entered the separate judgments against Bates and E S.
The defendants timely filed motions for judgment notwithstanding the verdict, new trial, and remittitur. The defendants also filed motions to alter, amend, or vacate the judgment on the grounds that a court order signed by the trial judge after the verdicts were rendered described events that occurred off the record and failed to set out all the facts in a clear, fair, and impartial manner. All post-judgment motions were not ruled on by the trial court and were deemed overruled as a matter of law after 90 days, pursuant to Rule 59.1, A.R.Civ.P. After the defendants appealed to this Court, the case was remanded to the trial court for an order on the question of excessiveness of the jury verdict, pursuant toHammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986).
The parties raise many issues for our review on appeal. Due to the complexity of the case, we have consolidated several of the issues for clarity.
 I.
The first area of the appellants' argument that we will review is the submission of the claims to the jury. Bates and E S argue that the trial judge erred in refusing to determine as a matter of law that the policies in question provided coverage and were unambiguous before submitting the claims to the jury. Bates and E S maintain that had the trial court interpreted the policies, as they contend must be done, the judge would not have submitted the claims of fraud and negligent procurement to the jury, presumably because in their opinion, he would have found the policies unambiguous. Specifically, Bates and E S argue that the 1982 policy provided claims-made basis coverage and the 1983 policy provided occurrence-basis coverage, and that both are clear and unambiguous, and, therefore, *Page 58 
that there is no question of construction for the jury, but, rather, a duty of enforcement for the trial judge.
Therefore, we must first determine whether the trial judge erred in submitting the claims to the jury without making the determinations as to the policies. Resolution of this question involves a two-step inquiry. We must determine first whether the policies are ambiguous and, if they are, how and by whom the ambiguities are to be interpreted. We will then address the alternative argument made by the appellants that even if it was proper for the jury to hear the claims, the facts did not support the verdict.
We find the appellants' contention that the policies were clear and unambiguous to be totally without merit. Precision concedes that the 1982 policy provided claims-made coverage as it was represented to provide. However, there is no agreement as to the 1983 policy. Therefore, we will concentrate on the 1983 policy.
The evidence at trial indicated that while the 1983 policy was written on an "occurrence" form, it stated clearly that it was a claims-made policy and it contained various restrictions and endorsements that made it appear less like an occurrence-basis policy and more like a claims-made policy. In fact, Bates was unsure of the policy when it received the policy from E S. After an in-house examination left Bates uncertain, Bates turned to other outside insurance dealers. These dealers were also uncertain as to the type of policy.
The numerous ambiguities in the policies cannot be resolved from an examination or interpretation of the writing itself. The ambiguities are in the type of the policy and type of coverage — "claims made" or "occurrence." We are not concerned with the meaning of individual words within the documents, but, rather, with the entire policy and the type of coverage provided. Resolving this question can be accomplished only by an examination of the representations, actions, and intentions of the parties involved in the procurement and sale of the policies.
In Upton v. Mississippi Valley Title Insurance Co.,469 So.2d 548, 555 (Ala. 1985), we noted that " '[i]t is . . . theprovince of the court, not the jury, to construe a policy, eventhough ambiguous and unclear and not void for uncertainty,where its interpretation must come from the writing itself
without the aid of evidence aliunde or facts in pais.' " (Quoting Aetna Life Ins. Co. v. Hare, 47 Ala. App. 478,256 So.2d 904 (1972) (emphasis added in Upton).) It is, therefore, within the jury's province when the policy must be interpreted through facts outside the document. In Upton, the document was unambiguous and the trial judge "had the duty only to construe and enforce the policy as it was written, giving it effect according to the obvious meaning of provisions expressed in unambiguous terms." 469 So.2d at 555.
As we have stated, the policy was ambiguous and those ambiguities could be resolved only through evidence and facts outside the document itself. The trial court was unable to resolve the ambiguity without considering facts outside the document and, therefore, was correct in submitting the claims to the jury. It was for the jury to examine the testimony of the parties involved and to determine exactly what the parties intended. See State Farm Mutual Automobile Insurance Co. v.Lewis, 514 So.2d 863 (Ala. 1987) (interpreting ambiguous contract requires that intent of parties be considered).
The appellants, in the alternative, argue that even if the trial judge was correct in submitting the claims to the jury, the facts do not support the verdict. The appellants argue that the facts do not support the existence of the elements necessary to establish fraud. In Coastal Concrete Co. v.Patterson, 503 So.2d 824 (Ala. 1987), we set out the elements of fraud:
 " 'Fraud' is defined as (1) a false representation (2) of a material existing fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result of the misrepresentation. Earnest v. Pritchett-Moore, Inc., 401 So.2d 752
(Ala. 1981). If fraud is based upon a *Page 59 
promise to perform or abstain from performing in the future, two additional elements must be proved: (1) the defendant's intention, at the time of the alleged misrepresentation, not to do the act promised, coupled with (2) an intent to deceive. Clanton v. Bains Oil Co., 417 So.2d 149
(Ala. 1982)."
Id. at 826. See also Pugh v. Southern Life Health InsuranceCo., 544 So.2d 14 (Ala. 1988).
Appellants contend that several of the requisite elements are not present. E S argues that Charlie Garrison never meant his statement that he would match the Trammell-Harper occurrence proposal, to mean precisely match, and that he could not make such a statement, as he had no authority to do so. Thus, E S contends, no false representation has occurred. E S also argues that Garrison did not misrepresent a material fact and that Precision did not rely on the representation and that if it did then any reliance was unreasonable. We have reviewed the record, and we find no merit in any of the appellants' contentions. The facts present overwhelming evidence of numerous instances of fraudulent representations. The record and the testimony at trial indicate that Bates left the meeting with Garrison with the clear understanding that E S would match the Trammell-Harper proposal and provide occurrence-basis coverage. Furthermore, the evidence revealed that Garrison, in fact, stated that he would match the offer or provide occurrence coverage for Precision.
E S further argues that because Garrison did not have the authority to make such a statement, he could not have done so. We find this equally unpersuasive. The fact that Garrison did not have authority does not preclude him from making the statement. The evidence showed that Garrison was faced with the possibility of losing all of Precision's business if he could not match the Trammell-Harper proposal. Evidence at trial also showed that Garrison stated that he wrote a limited policy to insure a profit. We find ample evidence in the record to support a finding of the elements of fraud and to support the verdict.
E S contends that Garrison made no representation of a material fact, because, it says, at most he was promising to perform in the future. In order to establish fraud in a promise to perform in the future, it must be shown that the defendant, at the time of the promise, did not intend to do the act but intended to deceive. Coastal Concrete Co., 503 So.2d at 826.
Here again, the facts clearly suggest that Garrison made the promise to match the Trammell-Harper proposal in order to prevent Precision from relocating its business and that he did not intend to issue an occurrence policy. In 1982, as well as in 1983, Bates and E S informed Precision that Bates could not obtain an occurrence-basis policy and that its policy was the best it could do. However, when Precision became aware that it could get such a policy, Garrison was quick to promise that he would provide the same coverage. Garrison's actions suggest that his sole motive was protecting his account and business with Precision and that he, in fact, never intended to match the proposal, as he stood to make more profit by issuing a limited claims-made policy to Precision. When Marshal Culifer of Bates contacted Garrison to question him about the 1983 policy, Garrison stated that he knew it was not an occurrence-basis policy and that it could not be an occurrence-basis policy, because he did not have authority to issue such a policy.
As for Garrison's intent to deceive, the second element, it is equally clear that there was evidence that he concealed his intentions from Bates, as well as from Precision. Garrison wrote the policy on an "occurrence" form presumably to give the appearance that the policy was an occurrence policy, while, in fact, the policy was so limited that it provided narrow claims-made coverage, at best. Precision was not provided with a copy of the policy until Beacon began to deny coverage in 1984. Garrison informed Bates that the policy "was the best he could do" or that "that's *Page 60 
all there is," indicating that Garrison had never intended to issue the promised policy.
There was evidence of a fraud and evidence that Bates actively engaged in perpetrating the fraud on Precision. While Bates entertained serious doubts as to the coverage the policy provided, it did nothing to inform Precision of its doubts. In fact, Bates informed Precision on several occasions, through written notice and a temporary policy, that occurrence coverage was in place.
The final element of fraud that E S argues is not present is reliance by Precision. E S contends that Precision could not have reasonably relied on any representations made by E 
S. However, the facts suggest otherwise. Garrison informed Bates that he would match the Trammell-Harper proposal and would provide occurrence coverage. Bates, in turn, informed Precision of this and later, on two separate occasions, told Precision that the policy was in place. With respect to Bates, Precision's reliance was certainly justified. Precision, in addition to having dealt with Bates for insurance since 1964, received written and oral notice that its insurance would be on an occurrence basis. Precision's reliance as to E S was also justified as E S promised to match the policy offered by Trammell-Harper. While this was conveyed to Precision through Bates, the reliance was still reasonable and justifiable under the circumstances. See Hickox v. Stover, 551 So.2d 259 (Ala. 1989).
Finding that the evidence presented to the jury overwhelmingly supported a finding of the elements necessary to establish fraud, we also find evidence that Precision was proximately harmed as a result of this fraud. We will specifically address the question of damages later in this opinion.
The appellants finally argue that the trial court erred when it admitted a non-party's complaint into evidence. The trial court admitted into evidence the complaint of Safety Mutual for the limited purpose of the expression of Safety Mutual's position with regard to the claim of the plaintiff and to prove that Safety Mutual denied coverage to Precision. Safety Mutual, as noted, issued the umbrella policy that covered any liability in excess of the primary Beacon policy. We find no error in the limited introduction of this complaint. Furthermore, if there was error, it was cured by the trial court's limiting instruction to the jury as to the purpose of the admission. Finally, the record indicates that any objection the appellants may have had to this introduction was withdrawn; thus the alleged error cannot be raised on appeal as erroneous.
 II.
Appellants' next alleged error regards the separate verdict forms that the trial judge submitted to the jury. They argue that the separate verdicts returned by the jury constituted an apportionment of damages. In addressing these issues, we must first determine the validity of the separate verdict forms.
The record indicates that the trial judge agreed to the four separate verdict forms at the appellants' request during the charge conference. Bates and E S were concerned with identifying any damages against each of them in the event of a plaintiff's verdict and with having verdict forms that would allow the jury to separately identify damages against each defendant. These forms were agreed upon and were eventually submitted to the jury. No objection was made to these forms, nor to the instruction that accompanied them.
The appellants now argue that it was error to use these forms, claiming that they amount to an apportionment of damages. The appellants made no objection at trial, but rather agreed to, and, in fact, asked for these forms; therefore, they cannot now argue error in the use of these verdict forms.Rainsville Bank v. Willingham, 485 So.2d 319 (Ala. 1986) (consent to form of verdict at trial bars attack on appeal).
Assuming, arguendo, that the appellants could be heard to argue here that it was error to use separate verdict forms, we do not believe their argument to be compelling. Appellants argue that the separate *Page 61 
verdict forms are an apportionment of damages, which, they correctly point, would be illegal in Alabama. However, we do not believe the use of these verdict forms amounted to an apportionment of damages. Several of our recent decisions prove dispositive of this question.
In Horton v. Shelby County Medical Center, 562 So.2d 127
(Ala. 1989), we addressed substantially the same question. InHorton, the trial court submitted seven separate verdict forms to the jury. We disposed of the arguments against the separate verdict forms on two grounds. First, as in the present case, counsel made no objection to the separate forms. We held that "once the jury charge has been accepted by counsel, counsel cannot, on appeal, argue error in the giving or refusal to give a particular charge." Id. See also General Sales Co. v. Miller,454 So.2d 532 (Ala. 1984) (failure to object to jury charges meant the alleged error had not been preserved for review). Second, we held that, assuming error could be assigned to the forms, "the law does not require any particular form in which a verdict must be rendered so long as it responds substantially to the issues raised." Id. (citing Whitmore v. First CityNational Bank of Oxford, 369 So.2d 517 (Ala. 1979). Last, it was noted that the separate verdict forms did not allow an apportionment of damages, and, thus, were not submitted in error.
In the case at hand, the four separate verdict forms were submitted to the jury at the request of the defendants and the jury returned verdicts of $875,000 against Bates and $875,000 against E S. Because we find that the appellants cannot now assign error to the very verdict forms they requested and to which they made no objection, and that the use of these forms cannot be construed as an apportionment of damages, we see no need to address the issue of the divisibility of the injuries as briefed by the parties.
We must, however, address another issue directly related to the use of the separate verdict forms. Appellants cite as error the trial judge's clarification of the verdicts returned. Appellants contend that after the jury returned the verdict, the jury was discharged by the court. When a question as to the amount of the verdict arose, the trial judge reassembled the jury and polled them as to their intentions with respect to the verdict. Appellant E S argues that the trial judge committed reversible error by reassembling the jury after it had been discharged and Bates contends that the polling of the jury was an attempt to correct the verdict.
With respect to the alleged error regarding the reassembly of the jury, we find no merit in this contention. The trial court's order does not indicate that the jury was discharged, but, rather, indicates that the jury had not been released by the court or the bailiff prior to the judge's polling. Clearly, the trial judge's recollection of what transpired is due to be given considerable weight over affidavits of counsel and is deemed to be conclusive for this appeal. See Clements v.Webster, 425 So.2d 1058 (Ala. 1982) (absolute truth imputed to record); Richards v. Elrod, 284 Ala. 19, 221 So.2d 378 (1969);Gorum v. Samuel, 274 Ala. 690, 151 So.2d 393 (1963);Ledbetter-Johnson Co. v. Hawkins, 267 Ala. 458,103 So.2d 748 (1958).
Bates's argument that the polling of the jury by the trial judge amounted to a correction of the verdict is equally without merit. There was no motion by either side to poll the jury once its verdict was returned. To prevent confusion, the trial judge polled the jury for the sole reason of clarification. We find no error in the trial judge's actions.
 III.
Appellant Bates next argues that the trial judge erred in refusing to give certain jury instructions. Particularly, Bates argues that the trial court's refusal to give requested instructions 7 and 12 dealing with questions of the duty of Bates to obtain insurance through a carrier licensed to do business in Alabama and to inquire into the financial status of the insurance company was error.
The statute upon which Bates relies for this objection, Ala. Code, 1975 § 27-10-20, *Page 62 
was read in its entirety to the jury. We find no error in the trial judge's exercising his discretion not to read the requested instruction.
 IV.
Appellant E S further argues that the amended complaint filed by Precision amounted to a pro tanto substitution of the original complaint and did not relate back for the purpose of determining compliance with the statute of limitations.
E S argues that the amended complaint filed by Precision on January 19, 1988, did not refer to the prior complaint or reallege any allegations contained in the prior complaint. Therefore, E S contends, the amended complaint is a pro tanto
substitution and causes the statute of limitations to bar Precision's cause of action. Relying on our holding in Zeiglerv. Baker, 344 So.2d 761 (Ala. 1977), E S asserts that in order for an amended complaint to relate back there must be an "amendment" and that there can be no such amendment when no mention of the original complaint is made in the amended complaint.
Appellant's reliance on Zeigler is somewhat misplaced. Relation back is governed solely by Ala.R.Civ.P. 15(c). Rule 15(c) states in part:
 "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. . . ."
We have recently had the opportunity to rule on a situation very similar to the one at hand. In Money v. Willings DetroitDiesel, Inc., 551 So.2d 926 (Ala. 1989), it was argued that the plaintiff's amended complaint did not relate back to the time of the filing of the original complaint and was, thus, barred by the statute of limitations. We noted:
 " '[U]nder Rule 15, Alabama Rules of Civil Procedure, amendments are to be freely allowed when justice requires. However, this is not "carte blanche" authority to amend a complaint at any time. If this rule is to be of any benefit to the bench, the bar, and the public, the trial judges must be given the discretion to allow or refuse amendments.'"
Id. at 928 (quoting Taylor v. Dothan City Board of Education,513 So.2d 623, 624 (Ala.Civ.App. 1987)) (citations omitted). In Money, the trial court did not abuse its discretion, and we are of the opinion here, also, that the trial judge did not abuse his discretion in allowing the amendment. Further, we noted that where the amendment adds an additional theory and that theory is based on the same facts, "no prejudice is worked upon the other party." Id. at 929 (quoting Whitfield v. Murphy,475 So.2d 480, 482-83 (Ala. 1985)). See Katopodis v. Pope,542 So.2d 1229 (Ala. 1989) (amendment arising out of conduct, transaction, or occurrence relates back); McCollough v.Warfield, 523 So.2d 374 (Ala. 1988); Alfa Mutual Insurance Co.v. Smith, 540 So.2d 691 (Ala. 1988); McClendon v. City of Boaz,395 So.2d 21 (Ala. 1981) (adding new theory or revamping format is immaterial and when amendment is based on same facts previously brought to attention of opposing party, no prejudice is worked). See also Knox v. Cuna Mutual Insurance Society,282 Ala. 606, 213 So.2d 667 (1968).
We are unable to find reference in our prior decisions on point to the appellant's argument that there must be a specific reference or incorporation of a prior complaint in order for an amended complaint to relate back. The trial judge made sound use of his discretion, and we see no reason to reverse his decision. We find that the amended complaint relates back to the date of the original complaint and that it is not time-barred. Therefore, we do not reach the issue of pro tanto
substitution argued by appellant E S.
 V.
Appellant E S next argues that the trial court improperly admitted the testimony of Precision's expert witness. E S contends that the testimony of Precision's expert witness, Sam Rosenthal, was opinion-based *Page 63 
hearsay, and, therefore, was inadmissible. There is some question as to whether a proper objection or motion to exclude was made; however, we need not determine that question.
We are of the opinion that the trial court did not commit reversible error in admitting this testimony. Expert witnesses may, at the discretion of the trial judge, be allowed to testify based in part upon hearsay. Brown MechanicalContractors, Inc. v. Centennial Insurance Co., 431 So.2d 932
(Ala. 1983). Also, Rosenthal's testimony appeared to be based, at least in part, on his own investigations into the type of coverage Precision actually purchased. Rosenthal's opinion was based on his investigations and examinations and, while appellants were free to attack the testimony on other grounds, we believe the trial court was within its discretion in admitting the testimony.
Any conceivable error that could have been committed by the trial court was corrected by the instruction given to the jurors that they were the "exclusive judges of the weight to be accorded to Rosenthal's testimony." The instruction stated:
 "We've also allowed some of these experts to express opinions and draw conclusions. And passing upon the facts, you're not required to accept the conclusions or expressed opinions of expert witnesses, but you must determine for yourselves the weight to be given such testimony and evidence when considered in connection with all other evidence material to the issues."
We find no reversible error in the admission of the expert opinion.
 VI.
The last argument of appellant Bates that we will address is the argument that the jury's award of damages is excessive. Bates argues that the facts do not support the verdict, that the award is excessive, and that the verdict is the result of confusion, sympathy, bias, passion, or prejudice. E S argues that the damages are speculative. We disagree with both appellants' arguments.
After this appeal was filed, but before the case was submitted on the merits, this Court remanded the case for the trial court to enter findings and conclusions in conformity with Hammond v. City of Gadsden, 493 So.2d 1374 (Ala. 1986). The trial court entered an order essentially stating that the verdict was supported by the evidence and that the verdict was not the result of bias, passion, or prejudice. Bates maintains that Precision should not have been permitted to recover out-of-pocket expenses and compensatory damages, and that because it did recover both the award is excessive. Bates cites confusion as the reason for the verdict.
Under the facts of the case, however, the jury was justified in making this award. We have stated that there are ample facts in the record to support a finding of fraud by the jury. As we stated in Southern Life Health Insurance Co. v. Smith,518 So.2d 77, 82 (Ala. 1987), "[d]amages are excessive if they shock the judicial conscience or are so great as to indicate bias, passion, or prejudice." In Southern Life, as here, the damages were not excessive under any standard. In SouthernLife, Justice Houston stated:
 "The facts were in dispute. The jury resolved this dispute in favor of Smith. While the harm that occurred in the case was slight, the harm likely to result from selling insurance coverage that will not be provided is great. Such conduct is reprehensible. It should be punished and deterred. . . ."
518 So.2d at 82.
For the foregoing reason, the judgments of the trial court are affirmed.
87-1356 — AFFIRMED.
87-1366 — AFFIRMED.
HORNSBY, C.J., and JONES, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur. *Page 64